A96A2537. XPRESS CARGO SYSTEMS, INC. et al. v. MCMATH.
(481 SE2d 885)

JOHNSON, Judge.

Xpress Cargo Systems ("Xpress") and its insurer, International Indemnity Company ("International"), appeal a personal injury judgment in favor of Evelyn McMath. A Fulton County jury awarded McMath $100,000 in damages after finding Xpress responsible for the injuries she sustained in a collision with its parked delivery truck. We find International was properly joined as a defendant pursuant to OCGA § 46-7-12 (e), which authorizes a direct cause of action against an insurer. As the trial court properly excluded evidence that McMath had no driver's license and did not err by limiting the scope of testimony given by Xpress' expert, we affirm.

1. As Xpress correctly states, evidence that a plaintiff or defendant driver in an automobile personal injury case had no valid license is inadmissible unless a causal connection exists between the accident and the absence of a license. *Fielding v. Driggers*, 126 Ga. App. 365 (1) (190 SE2d 601) (1972). Xpress claims such a causal connection existed in this case because McMath had no license at the time of the accident as a result of impaired vision. Xpress argues the accident was caused by her impaired vision and, therefore, there is a causal connection between the accident and the absence of a license. This argument is without merit. Regardless of the status of McMath's driver's license, the question for the jury was whether her allegedly *impaired vision* caused the accident. Xpress' citation to *Co-Op Cab Co. v. Arnold*, 106 Ga. App. 160, 164 (3) (126 SE2d 689) (1962) does not support its position, because in that case no objection was made to evidence that the defendant's license had been revoked.

Even if the trial court should have allowed evidence that McMath had no driver's license, its exclusion of the proffered evidence was harmless. McMath admitted on cross-examination that she did not obtain a driver's license until after this accident.

Although the trial court prohibited counsel for Xpress from asking any further questions on this issue, the jury was never instructed to disregard the answer or the question. Therefore, evidence that McMath did not have a valid license at the time of the accident was before the jury.

2. Xpress contends the trial court improperly limited the testimony of its expert ophthalmologist, who reviewed the results of an eye exam given to McMath shortly after the accident. This expert opined that at the time of the accident, McMath had cataracts and her vision would have been severely blurred. In the doctor's opinion, even if McMath were wearing corrective lenses, her vision would have been no better than 20/200 in the right eye and 20/400 in the left. Xpress, however, claims the trial court improperly excluded the expert's opinion on two other issues.

(a) The trial court did not allow the doctor to testify that McMath's poor vision would have disqualified her from obtaining a Georgia driver's license. The exclusion of this opinion was not error, as the ophthalmologist was not competent to testify regarding Georgia motor vehicle law. The expert opined that McMath would not have been able to achieve 20-60 corrected vision. In its charge, the trial court instructed the jury that Georgia law prohibits a person from obtaining a driver's license unless his or her visual acuity is at least 20/60, corrected or uncorrected. Therefore, the jury could determine from the evidence presented whether McMath was legally qualified to drive. See *McMichen v. Moattar*, 221 Ga. App. 230, 231 (1) (470 SE2d 800) (1996); *Baxter v. Melton*, 218 Ga. App. 731, 732 (463 SE2d 53) (1995).

(b) The trial court also prevented the expert from testifying that McMath's vision was so impaired she could not drive safely. The expert expressed her opinion regarding the extent of McMath's visual impairment. But it was not error to prevent her from testifying as to the ultimate issue in this case. The jury was able to determine from the evidence and opinion presented whether McMath was capable of driving "safely," or non-negligently. See *McMichen*, supra. The trial court properly limited the scope of the doctor's opinion to exclude any conclusion that McMath's actions were negligent. See *Emory v. Dobson*, 206 Ga. App. 482, 484 (426 SE2d 50) (1992).

3. In its final enumeration, Xpress contends it is not a "motor carrier" subject to OCGA § 46-7-12 (e); therefore, International should not have been joined as a party to the case.

The record shows Xpress was registered with the Georgia Public Service Commission and possessed a Class "G" permit "to transport PROPERTY only in interstate commerce only on and along the following route in the State of Georgia, in accordance with the Rules and Regulations of the Commission and the Georgia Motor Carrier

laws applicable to Motor Carriers engaged solely in interstate business over the highways of Georgia." The permit specifically classified Xpress as engaged in "Pickup or delivering motor carrier of air freight exempt under Section 10526 (a) (8) (B) (c)." Xpress had a certificate of insurance on file with the PSC naming International Indemnity as its liability carrier.

The trial court did not err in finding Xpress to be a "motor carrier" subject to the statute, as it falls within the definition of a "motor contract carrier" or "motor common carrier" found in OCGA § 46-1-1 (7) (A) and (B) (1994 version).[1] None of the exceptions found in OCGA § 46-1-1 (7) (C) (1994 version) removes Xpress from that definition. Xpress contends that because Xpress was an "air freight carrier" exempt from Federal Interstate Commerce Commission regulation by virtue of former 49 USC § 10526 (a) (8) (b) (C), it is also exempt from the Georgia definition of "motor carrier." The authority Xpress cites for this proposition, *Nat. Indemnity Co. v. Tatum*, 193 Ga. App. 698 (388 SE2d 896) (1989), does not apply because that case deals with a carrier specifically exempted by the Georgia statute. Xpress is not exempt from OCGA § 46-7-12 (e) simply because it engages only in interstate commerce. *Williams v. Southern Drayage*, 213 Ga. App. 895, 896 (446 SE2d 758) (1994). Neither does the federal law preempt the Georgia definition of motor carrier for purposes of this personal injury action. See *Westport Trucking Co. v. Griffin*, 254 Ga. 361, 363-364 (329 SE2d 487) (1985). Regardless of whether federal carrier regulations and requirements apply to Xpress, Georgia's direct action statute does apply, and the trial court did not err by refusing to dismiss International from this action.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 20, 1997 —
RECONSIDERATION DENIED MARCH 3, 1997 — ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Lane, O'Brien & Caswell, Stephen J. Caswell, David E. Keystone*, for appellants.

*Dwyer, White & Sapp, J. Matthew Dwyer, Jr., Anne W. Sapp*, for appellee.

---

[1] The language at issue in the 1994 version of OCGA § 46-1-1 (7) is now found at § 46-1-1 (9).