## A98A1776. DEPARTMENT OF TRANSPORTATION v. WALLACE ENTERPRISES.
### (505 SE2d 549)

ELDRIDGE, Judge.

Wallace Enterprises ("Wallace") owns and operates a gasoline convenience store and car wash at the intersection of Maddox Street (State Highway 120) and Old Norcross Road in Alpharetta, Fulton County, Georgia. The property consists of .921 acre of improved land containing a gasoline convenience store, car wash, and parking area.

On September 19, 1995, the Department of Transportation ("DOT") brought a quick-take condemnation procedure against the property to obtain immediate title and possession to the part taken of the property, as well as the easement area. The take involved real estate, fixtures, and improvements: (1) 5,296 square feet (.122 acre) of land in fee simple; (2) 3,110 square feet (.071 acre) of land for a permanent slope and maintenance easement; and (3) personal property, fixtures, and improvements, i.e., concrete pavement, parking spaces, curbing, a detention pond, landscaping, and lighting. The business contains two pump islands with three pumps each located perpendicular to the existing right-of-way. Neither of the pump islands nor the convenience store was taken. Prior to the take, there was one commercial driveway which DOT replaced with two commercial driveways.

After the taking, the remainder suffered permanently impaired access, permanently impaired traffic flow within the site, reduced capability to handle multiple gasoline customers, insufficient park-

ing, and inadequate visibility from the road. Wallace had to incur the expense of applying for and obtaining a variance from the City of Alpharetta's setback requirements as a result of the taking.

At trial, Wallace's expert appraisal testimony and other evidence showed actual and substantial consequential damages of between $844,805 and $859,761.

DOT contended that there were no consequential damages and that the actual damages were $211,250. DOT contended that Wallace should mitigate any consequential damages and tendered a plan that their expert witness contended would eliminate any consequential damages by implementing its cost to cure plan. Under DOT's plan, the pump islands would be moved back to improve site circulation. Parking and light poles would also have to be relocated. Such plan was contended to result in only four feet in loss between each pump island and the interior of the property's concrete curbing. Such plan would cost an estimated $95,097. At the time of trial, Wallace had taken no measures to mitigate any damages to the remaining property.

Wallace's expert appraisal testimony showed consequential damages to the remainder of the property, above and beyond any mitigation damages, of between $470,600 and $483,758. Such consequential damages were based upon conditions of the property immediately after the take. In addition to appraisal testimony, Wallace presented evidence to corroborate that there had been consequential damages; a gasoline convenience store site expert testified that the sales at the property had dramatically declined as a result of the take and not from the temporary construction or competition. No evidence of business expenses was tendered.

The jury returned a verdict for $612,000, which was entered as a judgment on May 23, 1997.

DOT filed a timely motion for new trial. On December 16, 1997, the trial court denied the motion. A timely notice of appeal was filed.

1. DOT's first enumeration of error is that the trial court erroneously admitted evidence of a temporary reduction in gross sales that resulted from the temporary period of construction. We do not agree.

The trial court properly denied such objection when there existed a material issue of fact as to whether the reduction in gross sales was temporary or permanent and whether such reduction in gross sales was caused by consequential damages or caused by construction and/or competition. *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825, 827 (387 SE2d 877) (1990), held "that evidence of *any* business losses which result in a diminution of the value of a condemnee's business is admissible. However, evidence of temporary loss of business is admissible not for the purpose of recovering for the temporary loss of business but for the limited purpose of demonstrating fair market

value of the land not taken immediately after the taking. . . . It is up to the trier of fact to determine whether the business losses suffered as a result of a temporary easement were a mere inconvenience or whether they resulted in a diminution of the value of the condemnee's interest in the land not taken." (Emphasis in original.) Accord *Timmers Chevrolet v. Dept. of Transp.*, 261 Ga. 270, 271 (1) (404 SE2d 121) (1991). "Where a part of the property is condemned and the business continues to operate on the remaining property, the business may suffer damages during the construction of the public project; if the business losses are caused primarily by severe inconveniences from the construction of the project and the business will return to normal after completion of construction, evidence of business losses is not admissible. [Cits.]" *Bill Ledford Motors v. Dept. of Transp.*, 225 Ga. App. 548, 550-551 (484 SE2d 510) (1997). Unlike either *Timmers Chevrolet* or *Ledford Motors*, the trial court properly denied the objection when there existed a material issue of fact between the opinions of opposing experts as to whether or not these were temporary losses and the causes and whether the business would ever return to normal. DOT, while admitting that there would be consequential damages, claimed that through mitigation there would be no remaining consequential damages. In the face of such denial of consequential damages, loss of sales became relevant in corroboration of testimony as to the consequential damages. See *Buck's Svc. Station v. Dept. of Transp.*, supra; *Dept. of Transp. v. Baxley*, 194 Ga. App. 29, 30 (2) (389 SE2d 519) (1989); *State Hwy. Dept. v. Hood*, 118 Ga. App. 720 (165 SE2d 601) (1968). "Evidence of 'business losses' has been held admissible . . . where such evidence is relevant to the valuation of the amount of consequential damages to [the] remainder. [Cits.]" *Ledford Motors*, supra at 550.

2. DOT's second enumeration of error is that the trial court erroneously admitted evidence of a temporary reduction in gross sales where it was established that the losses began on the date of construction rather than the date of taking. We do not agree. Such enumeration was decided by Division 1; in any event, it was a jury issue decided adversely to DOT.

3. DOT's third enumeration of error is that the trial court erred in admitting evidence of a temporary reduction in gross sales to prove consequential damages to the remaining property when the condemnee did not present evidence of business expenses. We do not agree.

"DOT moved to strike this testimony [as to business losses] on the ground that, in the absence of business expenses, evidence as to gross sales is inadmissible. [Cit.] This would be true if the sole purpose of the testimony was to establish lost profits. However, loss of business and profits from a business located on the property not

taken but resulting from the condemnation may be considered as to its effect on the market value of the remainder, as a factor in determining consequential damages. [Cit.]" *Dept. of Transp. v. Baxley*, supra at 30 (2).

4. DOT's fourth enumeration of error is that the trial court erroneously admitted evidence of a temporary reduction in gross sales to prove consequential damages where no witness could identify consequential damages resulting from the temporary reduction of gross sales. We do not agree. Such enumeration of error is controlled by Division 1 as a factual question for the jury.

5. DOT's fifth enumeration of error is that the trial court erroneously admitted evidence of a loss in gross sales for the limited purpose of proving consequential damages without an instruction appropriately limiting the jury's consideration of the evidence. We do not agree.

After Wallace's expert witness was excused, having testified regarding sales losses that evidenced consequential damages, DOT moved to strike his testimony in its entirety, because it was premised on the sales loss and upon denial. DOT moved for a curative instruction on the grounds that the jury should be instructed that the evidence as to sales loss was inadmissible and should not be considered for any purpose by the jury, which was an incorrect statement of the law under the facts and circumstances of this case. DOT failed to make contemporaneous objections but chose to make a motion to strike the testimony. Failure to object contemporaneously waived the objection and the right to request untimely curative instructions. See *Sharpe v. Dept. of Transp.*, 267 Ga. 267 (476 SE2d 722) (1996). Further, the requested limiting instruction was erroneous, because it would tell the jury not to consider such testimony for any purpose. Had the limiting instruction told the jury that they were to consider the sales losses only for the purpose of corroboration of the existence of consequential damages, such would be a proper instruction.

6. DOT's final enumeration of error is that the trial court erroneously denied DOT's motion in limine to exclude evidence of a reduction in gross sales. We do not agree.

Divisions 1 through 4 control adversely to DOT so that the trial court properly denied the motion in limine. "A motion in limine is a pretrial method of determining the admissibility of evidence, as a party may secure a pretrial ruling on the admissibility of evidence or a ruling prohibiting any reference to certain evidence until its admissibility can be assessed in the context of the trial as it unfolds. [Cit.] By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judi-

cial power which must be exercised with great care." *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995). Here, the trial judge wisely exercised restraint in denying such motion under the circumstances of this case.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED AUGUST 17, 1998 — 

Thurbert E. Baker, *Attorney General,* Cathy A. Cox-Brakefield, *Senior Assistant Attorney General,* Dwyer, White & Sapp, William W. White, Anne W. Sapp, *for appellant.*

Holt, Ney, Zatcoff & Wasserman, Joseph S. Jacobson, Jay F. Castle, *for appellee.*