A00A0646. DEPARTMENT OF TRANSPORTATION v. ARNOLD.
(530 SE2d 767)

ELDRIDGE, Judge.

The Georgia Department of Transportation (DOT) acquired by condemnation 0.044 acres (20 feet x 100 feet) of land in fee simple, a permanent slope easement (15 feet x 100 feet), and an additional temporary driveway easement from Dr. Allen K. Arnold. The total parking area of 55 feet by 100 feet for Arnold Chiropractic, from which the total take came, had 35 feet by 100 feet affected, leaving only 20 feet by 100 feet not subject to the rights acquired by DOT. Prior to the taking, Arnold had 17 parking spaces. After trial, the jury returned a general verdict for $115,510, upon which judgment was entered on February 2, 1999, but DOT had tendered only $39,700. DOT contends that the trial court erred in allowing the jury to consider business loss claims as separate damages and in support of consequential damages, in denying admission of expert opinion as to future profitability beyond 1995, and in refusing to charge on mitigation of damages. We do not agree and affirm the judgment of the trial court.

On the date of taking on October 14, 1993, Arnold had an office on the subject property in Mableton; however, in November 1990, he had moved this office to Austell. But the Austell office proved to be a poor business location; therefore, he reopened the Mableton office in 1992. From January 1992 until March 1994, Arnold operated at both Mableton and Austell. After the taking and beginning of construction, Arnold consolidated all his business at one new location in Mableton in 1994.

1. DOT contends that the trial court erred in allowing business loss as a separate item of damages. We do not agree.

DOT contends that separate business loss could not be recovered, since "his evidence was not sufficient to support a separate business loss recovery because it showed that the business had not been totally destroyed and had successfully relocated."

Peculiar value for land is confined

> to property having an existing use [to] which the owner of the property is devoting it at the time it is taken by eminent domain when such land possesses a peculiar value for such use. It must appear, not that the property is peculiar, but that the relationship of the owner thereto is peculiar — its advantages to him more or less exclusive — that is, that it is property having value peculiar to the owner only, and without possible like value to others who might acquire it. . . . The issue of whether land taken or damaged in an eminent domain proceeding is unique or peculiar is a jury question.

(Citations and punctuation omitted.) *Macon-Bibb County Water &c. Auth. v. Reynolds*, 165 Ga. App. 348, 353 (3) (299 SE2d 594) (1983). See *Housing Auth. &c. of Atlanta v. Southern R. Co.*, 245 Ga. 229, 230 (1) (A) (264 SE2d 174) (1980); *Dept. of Transp. v. Sharpe*, 213 Ga. App. 549, 550-551 (1) (445 SE2d 343) (1994).

When dealing with eminent domain, property has a broad and liberal meaning under the constitution. See *Duffield v. DeKalb County*, 242 Ga. 432, 433-435 (2) (249 SE2d 235) (1978); *Woodside v. City of Atlanta*, 214 Ga. 75, 85 (103 SE2d 108) (1958). Therefore, when land qualifies as peculiar because of the peculiar relationship to the owner and when any business operated on such location has a particular "good will," an intangible property interest peculiar to the land, identified only with that location in the minds of clients, exists. Business losses reflect the value of such intangible property interest that is taken or destroyed in the condemnation and cannot be relocated, because such value is peculiar to that land and the owner's relationship to the business conducted on that location. See generally *Duffield v. DeKalb County*, supra at 433-434; see also *Macon-Bibb*

*County Water &c. Auth. v. Reynolds*, supra at 352-353. Arnold "had to have irrevocably lost something of value that could not be duplicated elsewhere." *Housing Auth. &c. of Atlanta v. Southern R. Co.*, supra at 232. Here it was "good will" associated with the business at that location.

This property was also unique, as well as peculiar, being located on the corner of Harding Drive and Bankhead Highway with adequate parking and having been a long-established business location of Arnold and of the Arnold family; it had been closely associated with the Arnold family businesses at such location since the 1930s and where most of Arnold's patients were accustomed to visit. Arnold, himself, had occupied such location for more than 20 years. Such owned office space had 3,000 square feet, but upon relocation only 1,300 square feet of rental space could be acquired. The business location represented the Arnold family and the good will associated with the Arnold business located there. Thus, the property not only was unique but also peculiar, so that the fair market value standard of evaluation was constitutionally inadequate to value such property interest. See *Macon-Bibb County Water &c. Auth. v. Reynolds*, supra at 353-355. "In other words unique [and peculiar] property is simply property which must be valued by something other than the fair market value standard." *Housing Auth. &c. of Atlanta v. Southern R. Co.*, supra at 230 (1) (A). " 'Unique' [or peculiar] property is measured by a variety of non-fair market methods of valuation, including the cost and income methods." Id.

> The loss of [property's] use for [particular] purposes is an element for consideration in awarding just compensation to the owner of the realty. The destruction of an established business is and must be a separate item of recovery. . . . The loss of an established business is an altogether different matter; such loss not merely reflects the value of the real estate, for frequently the value of the business greatly exceeds that of the premises where it is conducted.

(Citation omitted.) *Bowers v. Fulton County*, 221 Ga. 731, 739 (2) (146 SE2d 884) (1966). Here the property taken represented a public relations asset of Arnold as a family business presence in the community and as a form of intangible property, good will, which could not be relocated successfully and which could not attach to the business of another in the same location.

> The term property is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership and that which is subject to

be owned and enjoyed. The term property comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from the use.

(Citations and punctuation omitted.) Id. at 737. See also *Woodside v. City of Atlanta*, supra at 83.

Evidence of business losses attributable to the taking is admissible in a condemnation action where such losses are sought as a separate element of damages as to unique or peculiar property as well as when such evidence shows a diminution of value of the land not taken. *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825, 827 (2) (387 SE2d 877) (1990); see also *Dept. of Transp. v. Scott*, 268 Ga. 579, 580 (492 SE2d 216) (1997); *Timmers Chevrolet v. Dept. of Transp.*, 261 Ga. 270, 271 (1) (404 SE2d 121) (1991). It is within the sound discretion of the trial court to admit or deny admission of such evidence when causation of such loss is in question. *Macon-Bibb County Water &c. Auth. v. Reynolds*, supra at 352-353. Here, there existed some evidence as to causation which was sufficient for the jury to determine what business losses had been caused by the taking. *Timmers Chevrolet v. Dept. of Transp.*, supra at 271; see *Dept. of Transp. v. Baxley*, 194 Ga. App. 29, 30 (2) (389 SE2d 519) (1989); *Dept. of Transp. v. Consolidated Equities Corp.*, 181 Ga. App. 672, 673-674 (1) (353 SE2d 603) (1987).

For post-taking business losses to be recoverable separately, there must be either "a total taking of the business," *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336 (467 SE2d 319) (1996), or permanent business loss as opposed to temporary business loss due to construction inconvenience, *Housing Auth. &c. of Atlanta v. Southern R. Co.*, supra at 230; *Dept. of Transp. v. Fitzpatrick*, 184 Ga. App. 249-250 (2) (361 SE2d 241) (1987). In this case, Arnold showed that he could not operate the business in the original Mableton location any longer, because DOT took substantially all of his parking, and he sustained a permanent loss in business related to moving from the original location. Therefore, the business was totally destroyed as a chiropractic office at the taking location. See *Dept. of Transp. v. George*, 202 Ga. App. 270, 271-272 (3) (414 SE2d 307) (1991). Arnold also showed that there was a loss in patient visits at the new location in Mableton, because patients did not come to the new location. Further, the overhead cost in earnings from the remaining patient visits had substantially increased, further reducing profits after the taking.

"Whether property is unique [or peculiar] is a jury question, and only slight evidence of uniqueness [or peculiarity] is required to war-

rant the submission of the issue to the jury." (Citations omitted.) *DeKalb County v. Glaze*, 189 Ga. App. 1, 4 (2) (b) (375 SE2d 66) (1988).

2. DOT alleges that the trial court erred in failing to charge on Arnold's duty to mitigate damages. We do not agree.

The evidence showed that Arnold moved prior to the construction and temporary construction easement. At that time, no mitigation of damages was possible by repaving and repainting the parking lot, because construction was not complete. DOT's mitigation plan for Arnold's damages involved both what was left after the taking but also repaving and restriping the slope easement area for parking. DOT contended that Arnold could use the slope easement area for parking, giving him 15 parking spaces. However, Arnold contended that use of the slope easement for parking put him at the continuing mercy of DOT in the future for continued use so that he had to move his business. Thus, the DOT's evidence of possible mitigation of damages depended upon use of the slope easement but did not show that the slope would never change.

The trial court did not err in refusing to charge on mitigation of damages when the evidence did not support it, because DOT's mitigation plan required the complete use of both the slope easement area and not just use of the remainder of the original parking area still under Arnold's exclusive control. See *Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 794-795 (2) (366 SE2d 160) (1988) (striping the untaken parking area); *Dept. of Transp. v. Ladson Investments*, 158 Ga. App. 687, 690 (3) (282 SE2d 171) (1981) (where the condemnee failed to stripe the remaining parking area under DOT's plan). This is not a case where the striping of the unencumbered property would allow substantially the number of parking spaces previously used. DOT contended that Arnold could use the area of the slope easement for parking after it had been sloped but put up no evidence that the slope could not be changed in the future, destroying any paving and preventing parking. There was no evidence from which the jury could have determined that reasonable mitigatory options existed in fact and not mere theory. See *Dept. of Transp. v. Eastern Oil Co.*, 149 Ga. App. 504, 505 (4) (254 SE2d 730) (1979). Further, the jury heard both the DOT's experts' testimony in this regard and argument; apparently, the jury chose to believe that the slope easement effectively deprived Arnold of control over such subject land.

3. DOT contended that the trial court erred in excluding evidence of increasing profitability of the business more than two years after the taking. We do not agree.

DOT sought to have expert testimony given in rebuttal to demonstrate the increased profitability of the business from 1993

through 1998 for five future years. However, the trial court limited such testimony to only two future years, 1994 and 1995, and prior years, including 1992. Future profitability after the completion of the project to show an absence of permanent damages was reasonable; however, such period is not indefinite and must have a rational relationship to the condemnation. See *Dept. of Transp. v. Fitzpatrick*, supra at 250 (2). Where expert opinion is involved, the trial court has broad latitude in admitting, limiting, or denying such testimony. *Xpress Cargo Systems v. McMath*, 225 Ga. App. 32, 33 (2) (b) (481 SE2d 885) (1997); *Emory v. Dobson*, 206 Ga. App. 482, 483-484 (426 SE2d 50) (1992).

4. DOT contends that the trial court erred in allowing the jury to consider business losses to support the claim for consequential damages. We do not agree.

> [E]vidence of *any* business losses which result in a diminution of the value of a condemnee's business is admissible. However, evidence of temporary loss of business is admissible not for the purpose of recovering for the temporary loss of business but for the limited purpose of demonstrating fair market value of the land not taken immediately after the taking. We reach this conclusion because business property facing loss of business may suffer a diminution in fair market value. This is true whether the losses occur because of the condemnation of a temporary construction easement or whether they occur because of a permanent taking.

(Emphasis in original.) *Buck's Svc. Station v. Dept. of Transp.*, supra at 827. See also *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 2-3 (1) (505 SE2d 549) (1998); *Dept. of Transp. v. 2.953 Acres*, 219 Ga. App. 45, 49-50 (4) (463 SE2d 912) (1995). "It is up to the trier of fact to determine whether the business losses suffered as a result of a temporary easement were a mere inconvenience or whether they resulted in a diminution of the value of the condemnee's interest in the land not taken." *Buck's Svc. Station v. Dept. of Transp.*, supra at 827. Accord *Timmers Chevrolet v. Dept. of Transp.*, supra at 271 (1); *Dept. of Transp. v. Wallace Enterprises*, supra at 3.

The admission of evidence of factors which may reasonably influence a prospective purchaser's decision is a matter within the discretion of the trial court. *Macon-Bibb County Water &c. Auth. v. Reynolds*, supra at 350-351. The trial court did not abuse its discretion.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

Decided March 9, 2000 —
Reconsideration denied March 22, 2000 — 

*Thurbert E. Baker, Attorney General, R. O. Lerer, Senior Assistant Attorney General, Law Offices of James S. Howell, Donna W. Howell, Mark Weinstein, Weiner, Yancey, Dempsey & Diggs, Robert W. Diggs,* for appellant.

*Gore, Lee & Curry, Luke F. Gore,* for appellee.