301 Ga. 492
FINAL COPY

S17A0405, S17A1163.  THE STUTTERING FOUNDATION, INC. v. GLYNN COUNTY, et al. (two cases).

BENHAM, Justice.

These appeals arise out of the same trial court case and involve common issues.  The Stuttering Foundation, Inc. ("Foundation") is the tenant of office space in a commercial development in Glynn County that is owned by Lucas Properties Holdings III, LLC ("Lucas").  In September 2015, Lucas filed with the appropriate Glynn County agency an application for rezoning of the property for the purpose of obtaining authority to construct an addition to the rear of one of the existing buildings in the development, the building in which the Foundation leases its office.  It also sought approval of a site plan for the proposed construction.  Both were approved on March 17, 2016.

For various reasons, the Foundation opposed the new development, and on April 15, 2016, the Foundation filed a petition for judicial review of the rezoning application and Site Plan, or in the alternative, for mandamus

reversing the County's approval.[1]  Both the County and Lucas filed a motion

to dismiss the complaint on its merits, and on July 7, 2016, the trial court

entered an order granting the County's motion to dismiss, concluding that the

Foundation lacked standing to raise its objections to the rezoning.  This Court

granted the Foundation's application for discretionary appeal, the case was

docketed as Case No. S17A0405, and it was later briefed and orally argued by

all parties, including Lucas.[2]  In the interim, on December 12, 2016, the trial

court entered an order granting Lucas's motion to dismiss.  This Court granted

the Foundation's application for discretionary appeal of this second dismissal

order and the case was docketed as Case No. S17A1163.  Again, all parties

filed briefs in the case, including the County.

*Case No. S17A0405*

1.     First, we address the County's assertion that this appeal should be

dismissed because the Foundation failed to follow the requisite interlocutory

---

[1]  The Foundation's petition named as respondents Glynn County, its Board of Commissioners, and also the board members in their individual capacities.  For ease of reference, all the parties related to Glynn County are referenced together as "Glynn County" or the "County."  The petition also named Lucas and its principal, Arthur M. Lucas.  For ease of reference, these two parties are referenced together as "Lucas."

[2]  After the Foundation's application for discretionary review was granted, the appropriate Glynn County entities issued a building permit and a land disturbance permit by which Lucas was authorized to commence the construction opposed by the Foundation.

2

appeal procedure.  The County argues that the trial court order granting the County's motion to dismiss was not a final order since it did not adjudicate all the claims against the multiple parties in the case, nor did it contain an express determination of finality with respect to the County as required by OCGA § 9-11-54 (b) in order to make the order one that is final and immediately appealable.  But the assertion that the trial court order is not immediately appealable as a final order pursuant to OCGA § 5-6-34 (a) (1) is irrelevant.  The order also dismissed the Foundation's claim for mandamus relief and therefore was, at the time the notice of appeal was filed, immediately and directly appealable to this Court pursuant to OCGA § 5-6-34 (a) (7).  All other judgments and rulings raised on appeal are thus properly before this Court.  See OCGA § 5-6-34 (d).

2.    The Foundation states that it appeared at the public hearing on Lucas's application for rezoning and presented evidence and argument opposing the application.  When the County approved the application, the Foundation then filed its petition in the superior court.  In the petition, the Foundation alleged the application for rezoning should have been denied due to various deficiencies in Lucas's application and because various details of the rezoning request did not comply with the applicable zoning ordinance and

3

other regulations. The Foundation further asserted that the property is subject to easements and restrictive covenants created and recorded by the previous owner of the property, and that various details of the plan would violate the terms of these recorded easements and covenants and would thereby require the prior written consent of the owners of other lots within the tract covered by the easements and restrictions.[3] The Foundation alleged these violations would diminish the value of its leasehold interest in the property. The trial court granted the County's motion to dismiss, finding that the Foundation, as a tenant of the property's owner, lacks standing to challenge a rezoning decision made at the request of the fee simple owner. It also found the Foundation was not entitled to mandamus relief.

(a) The parties agree that the proper standard to apply when determining a party's standing to challenge a rezoning decision is the "substantial interest-aggrieved citizen" test.[4] By this test, "there [are] two steps to standing: First,

---

[3] A copy of the easements and restrictions was attached as an exhibit to the Foundation's amended petition. The Foundation's petition also relied on its rights under its lease, and a verified copy of it was filed in the proceeding by Lucas.

[4] The "historical saga" of the evolution of this test is summarized in *Massey v. Butts County*, 281 Ga. 244, 246-248 (637 SE2d 385) (2006), in which this Court noted that, although the test was originally created by statute and addressed the right to judicial review of the decisions of a board of adjustment and the decisions of a board of zoning appeals, it was later applied by this Court to rezoning decisions by local governing authorities.

. . . a person claiming to be aggrieved must have a substantial interest in the zoning decision, and second, . . . this interest [must] be in danger of suffering some special damage or injury not common to all property owners similarly situated." *DeKalb County v. Wapensky*, 253 Ga. 47, 48 (1) (315 SE2d 873) (1984). See also *Brand v. Wilson*, 252 Ga. 416, 417 (1) (314 SE2d 192) (1984) ("[T]he gauge for standing . . . is simply this: that a citizen must have a substantial interest, which must suffer substantial damage by reason of the contested zoning change."). The threshold issue posed in this case is whether the Foundation's status as a short-term tenant[5] confers upon it a "substantial interest" in the zoning decision sufficient to create standing to challenge it.[6] The parties cite no Georgia cases, and we have found none, that address

---

[5] The Foundation contends it is not a "short-term" tenant because its lease is for a term of five years, and further contends it has exercised an option to renew the lease for an additional five years. Although a presumption exists that a five-year lease conveys an estate for years, the intention of the parties as expressed by the terms of the lease agreement governs. See *Henderson v. Tax Assessors, Camden County*, 156 Ga. App. 590 (275 SE2d 78) (1980). Here, the lease agreement clearly states it conveys a usufruct and that the lease does not convey an estate in land. Accordingly, the Foundation is properly considered a short-term tenant.

[6] A controversy also exists regarding whether the Foundation is, at this time, merely a tenant at sufferance holding over after the expiration of the lease contract. The Foundation asserts it timely exercised its right to renew the lease, and Lucas asserts it timely notified the Foundation that the lease would terminate upon its expiration date, December 31, 2016. A separate lawsuit was filed in the superior court relating to this dispute, and the trial court's rulings in that dispute are currently the subject of an appeal pending in the Court of Appeals. See Court of Appeals Case No. A17A1259. Accordingly, no final determination has been made with respect to Lucas's assertion that because the lease has expired the Foundation no longer has rights under the lease. That issue is not raised in this appeal.

whether a short-term tenant of real property has standing to challenge a zoning decision made at the request of the tenant's landlord.[7]

(i) The Foundation's lease expressly states: "This Lease shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord and this Lease shall create a usufruct only." Whether a lease passes an estate in land or merely a usufruct depends upon the intent of the parties, and in a case like the one now before us involving private parties, the terms of the lease control. See *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines, Inc.*, 262 Ga. 119, 119-120 (414 SE2d 635) (1992). Even the Foundation appears to agree that the lease between Lucas and the Foundation creates a usufruct, not an estate for years. Under Georgia law, a significant distinction exists between the interest conveyed by a usufruct and the interest conveyed by an estate for years.

---

[7] The Foundation relies upon *Sneakers of Cobb County v. Cobb County*, 265 Ga. 410 (455 SE2d 834) (1995), for its assertion that a tenant has standing to challenge a zoning decision. Nothing in the opinion, however, establishes that the appellant in that case was a tenant of the property covered by the zoning ordinance at issue in that case. This Court held in *Sneakers* that because the appellant was no longer in possession of the property, its claims for injunctive relief were moot. Having disposed of the case as moot, the Court did not address or consider whether the appellant had actually held an interest in the property that would confer standing to challenge the zoning ordinance. See also *Simmons v. Dept. of Transp.*, 225 Ga. App. 572, 577-578 (484 SE2d 332) (1997) (Andrews, J., dissenting), in which the *Sneakers* case was characterized as one in which the property owner lacked standing to contest a zoning decision because it had been dispossessed of the property.

6

> Distinctions between an estate for years and usufruct are set forth in various Georgia statutes. The grant by one person to another of an estate for years is usually termed a lease, but an estate for years concerning realty does not involve the relationship of landlord and tenant. The relationship of landlord and tenant is created when the owner of real estate grants to another person the right simply to possess and enjoy the use of such real estate. In such a case, no estate passes out of the landlord and the tenant has only a usufruct which may not be conveyed except by the landlord's consent and which is not subject to levy and sale. A usufruct has been referred to as merely a *license* in real property, which is defined as authority to do a particular act or series of acts on land of another without possessing any estate or interest therein. On the other hand, an estate for years carries with it the right to use the property in as absolute a manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use.

(Citations and punctuation omitted.) *Jekyll Development Assocs., L.P. v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 273, 274 (1) (523 SE2d 370) (1999) (holding that an estate for years constitutes a taxable interest in land).

A lease that conveys a usufruct creates a right to possess and enjoy the use of real property, but it does not convey an estate or interest in real property. See OCGA § 44-7-1 (a). Consequently, the courts of this State have drawn distinctions between the rights and duties of a holder of a usufruct and those of a title holder. For example, a usufruct is not subject to ad valorem taxation pursuant to OCGA § 48-5-3. See *Macon-Bibb County Bd. of Tax Assessors v. Atlantic Southeast Airlines, Inc.*, supra, 262 Ga. at 119. As another example,

7

because a tenant who holds a usufruct is not one who owns real property, or any interest in real property, that interest is not sufficient to satisfy the statutory requirements of OCGA § 44-9-40 (b) to authorize the tenant to seek an easement by necessity over adjacent property. See *Read v. Ga. Power Co.*, 283 Ga. App. 451, 453 (641 SE2d 680) (2007). By comparison, in *Hollberg v. Spalding County*,[8] the Court of Appeals held that an individual who was not yet a title holder to an estate to land at the time he filed a challenge to a zoning decision, but was the devisee of a life estate in that property, had standing to challenge a zoning decision relating to adjacent property. The Court of Appeals reasoned that the devisee's inchoate title to the real property was sufficient to give him a substantial interest in the zoning decision that was sufficient to satisfy the first prong of the test for standing to appeal the decision. Id. That reasoning, however, does not apply to persons holding a usufruct. As noted, a usufruct does not pass an estate in real property.

Those cases in which the Georgia appellate courts have found a zoning decision challenger to have a substantial interest in the zoning decision, which satisfies the first prong of the standing test, have all involved holders of vested

---

[8] 281 Ga. App. 768 (637 SE2d 163) (2006).

or inchoate title to real property. See, e.g., *DeKalb County v. Wapensky*, supra, 253 Ga. at 49 (1); *Brand v. Wilson*, supra, 252 Ga. at 417 (1); *Hollberg v. Spalding County*, supra, 281 Ga. App. at 773 (2) (a). A number of cases have found a challenger who has no estate or interest in real property has no standing because he can show no substantial interest in the zoning decision. See, e.g., *Miller v. Fulton County*, 258 Ga. 882, 883 (1) (375 SE2d 864) (1989) (a husband who did not have an ownership interest in the property owned by his wife, which was allegedly injured by the zoning decision, lacked standing to join his wife in challenging the zoning decision, and this Court rejected the husband's argument that his marital status bestowed upon him an equitable interest sufficient to establish standing); *Bersch v. Hauck*, 122 Ga. App. 527 (177 SE2d 844) (1970). See also *Lindsey Creek Area Civic Assn. v. Consolidated Govt. of Columbus*, 249 Ga. 488 (292 SE2d 61) (1982) (a civic association comprised of members who own affected property lacks standing to challenge a zoning decision unless joined in the suit by a plaintiff who owns affected property). Because the usufruct granted in the Foundation's lease does not convey an interest in real property, the Foundation has no cognizable interest in this zoning decision that it could assert adversely to the actual property owner's interest. Under these circumstances, it cannot be said that

9

the tenant has a substantial interest in this zoning decision that grants it standing to challenge the decision.

As the trial court noted, the terms of a lease may impose a duty on the landlord to seek or oppose a zoning decision in order to effectuate the intent of parties,[9] but such a duty is contractual and may be enforced by an action against the landlord. Conversely, if the landlord obtains or resists a zoning decision such that the tenant's rights under the lease are adversely impacted or damaged, the tenant may have a remedy against the landlord for breach of contract.

The Foundation cites case law from other jurisdictions to support its assertion that a tenant has standing to challenge a zoning decision. But the only cases cited involving a tenant are inapposite.[10] And, in any event, reliance

---

[9] See *Myung Sung Presbyterian Church, Inc. v. North American Assn. of Slavic Churches & Ministries, Inc.*, 291 Ga. App. 808, 812 (3) (662 SE2d 745) (2008) (affirming the trial court's denial of the landlord's motion for directed verdict in a trial in which the tenant sought damages for the landlord's failure to seek a zoning variance that was required to permit the tenant's use of the property as contemplated in the lease, which was the landlord's implied duty under the terms of the lease).

[10] See *Metroweb Corp. v. County of Lake*, 474 NE2d 900 (Ill. App. Ct. 1985) (a tenant that held a lease that was contingent upon the approval of the tenant's conditional use permit application lacked the requisite possessory interest in the property to have standing to bring an action for declaratory relief with respect to a zoning decision); *Iowa Coal Mining Co. v. Monroe County*, 555 NW2d 418 (Iowa 1996) (tenant mining company had standing to bring an inverse condemnation case (not a challenge to a zoning decision) against a governmental entity as a result of new zoning laws that prohibited the company's use of the land it leased); *Sun-Brite Car Wash, Inc. v. Bd. of Zoning & Appeals of the Town of North Hempstead*, 508 NE2d 130 (N.Y. 1987) (status as a tenant is not an impediment to maintaining a challenge to a rezoning decision on other nearby property (not the landlord's own property); nevertheless, the tenant lacked standing to object to rezoning on the sole ground that the rezoning would increase business competition); *Made From Scratch,*

10

upon cases from other jurisdictions is unpersuasive because Georgia's landlord and tenant law is unusual in that it is based not on the common law but upon the statutory provision that the grant of a right simply to possess and enjoy the use of real estate passes no estate to the tenant but only a usufruct. See OCGA § 44-7-1 (a); *Thompson v. Crownover*, 259 Ga. 126, 127 (1) (381 SE2d 283) (1989).

(ii) The Foundation's efforts to analogize its right to contest the County's decision to grant the property owner's request for rezoning of its property to the rights of a tenant in a condemnation proceeding are unavailing. A condemnation proceeding involves the constitutional right to fair compensation for a governmental entity's taking of private property for a public use. See Ga. Const. of 1983, Art. I, Sec. III, Par. I (a) ("[P]rivate property shall not be taken . . . for public purposes without just and adequate compensation being first paid."). In that context, the value of a tenant's contract right under a lease to possess and use the condemned property may

---

*Inc. v. City of New York*, 607 NYS2d 242 (N.Y. App. Div. 1994) (affirming the dismissal of a tenant's challenge to the City Planning Commission's approval of the landlord's plans to modify a building on the ground of lack of standing because the grievance was, in fact, a business dispute between the landlord and tenant that was the subject of other lawsuits); *Richman v. Philadelphia Zoning Bd. of Adjustment*, 137 A2d 280 (Pa. 1958) (a tenant has standing to apply for a zoning variance).

constitute an additional aspect of the taking over and above the property rights taken from the fee simple owner. See, e.g., *Franco's Pizza & Delicatessen v. Dept. of Transp.*, 178 Ga. App. 331 (1) (343 SE2d 123) (1986) (both a leasehold and a usufruct involve a property right that "cannot be taken for public use without first paying just and adequate compensation"); *Ellis v. Dept. of Transp.*, 175 Ga. App. 123 (333 SE2d 6) (1985). Eminent domain cases apply a broad definition of "property rights" that extends beyond an interest in real property to encompass, for example, contract rights that are impacted by a governmental taking. See, e.g., *DeKalb County v. United Family Life Ins. Co.*, 235 Ga. 417, 419 (219 SE2d 707) (1975) (a mortgagee's contractual right to a prepayment penalty is a property right to be compensated in a condemnation proceeding); *Dept. of Transp. v. Arnold*, 243 Ga. App. 15, 16 (1) (530 SE2d 767) (2000) (the good will of a business operated on condemned property is an intangible property interest for which the business owner may seek damages). What the Foundation contests, however, is not a taking of its contract rights for public use by condemnation but a decision by the County to grant the real property owner's petition for rezoning so the owner can put the property to a different use. In truth, the County has taken nothing from the Foundation.

12

If Lucas exercises its right to develop its property in accordance with the new zoning decision and the approved site plan, and if by doing so Lucas impairs or destroys the value of the Foundation's usufruct interest, it is not without a remedy. Nothing prevents the Foundation from seeking damages from Lucas. The Foundation argues contract damages would not provide adequate relief because the rezoning decision could not be reversed in an action against the landlord and would remain in place. That is true, but it does not alter the fact that the Foundation has no standing to challenge the rezoning decision, as demonstrated by its petition. If a tenant can demonstrate its landlord has taken action that impairs its contractual rights, however, it may be able to recover damages from the landlord. See, e.g., *Myung Sung Presbyterian Church, Inc. v. North American Assn. of Slavic Churches & Ministries, Inc.*, supra, 291 Ga. App. 808, 812 (3) (662 SE2d 745) (2008). The Foundation has a remedy for the damages it alleges it will suffer, but it lacks standing to pursue a reversal of the County's zoning decision.[11]

---

[11] We reject the Foundation's argument that it, alone, can challenge the rezoning and address the risk of flooding and other damage allegedly posed by the rezoning. Its status as short-term tenant does not give the Foundation an interest in the real property that it can assert against the owner.

13

(b) That is not to say that a tenant can never establish standing to challenge the rezoning of the property it leases. In fact, the Foundation asserts that additional grounds beyond its mere status as a tenant of the subject property exist to establish its standing in this case. The Foundation asserts it is a beneficiary of the recorded easements and restrictive covenants ("Declarations") that burden Lucas's property, and that its interest in the Declarations will be harmed if Lucas makes the changes authorized by the County's decision. According to the Foundation, these circumstances create a substantial interest in the zoning decision sufficient to satisfy the first prong of the standing test, when considered in conjunction with its status as a tenant. But we are unpersuaded that the recorded Declarations contemplate short-term tenants of the owners of the burdened property to be beneficiaries of the easements and restrictive covenants created in that document.

Citing *Lee v. City of Atlanta*,[12] the Foundation first asserts that easement rights are property interests, and that is true with respect to a taking of an easement by eminent domain. Id. But this case does not involve a condemnation proceeding. Even if the Declarations grant beneficiary status to

---

[12] 219 Ga. App. 264, 265 (3) (464 SE2d 879) (1995).

14

the Foundation with respect to easements (which we reject, below), it does not create a property interest in those easements or establish that the Foundation has a substantial interest in the zoning decision so as to create standing to challenge it. The Foundation's status as a holder of a usufruct interest, as opposed to a party with property interests in the leased premises, is governed by the lease. The Foundation's remedy for the landlord's interference or violation of its easement rights, if any, is a claim for breach of contract. Again, no public taking of the Foundation's rights is involved in this case.

Citing *Barton v. Atkinson*,[13] the Foundation asserts that a beneficiary of recorded covenants has standing to challenge a rezoning that would allegedly violate the covenants. *Barton* involved a challenge by neighboring landowners who sought to enjoin the defendant from acting in reliance on a zoning ordinance that, according to the plaintiffs, violated certain recorded covenants that burdened the defendant's property. But this Court determined the plaintiff landowners lacked standing to invoke the covenants because, according to the terms of the instrument, they were not the owners of the property benefitted by the covenants. Id. at 734 (2). Unlike the restrictive covenants involved in this

---

[13]  228 Ga. 733 (187 SE2d 835) (1972).

case, the recorded restrictive covenants in the *Barton* case expressly referenced both the owners *and lessees* of the real property as parties to which the covenants related and identified them as beneficiaries of the covenants. Consequently, the reference to the rights of lessees mentioned in *Barton* is inapplicable to the Foundation, and the Foundation cannot show that it, as the holder of a usufruct interest in Lucas's property, is an intended beneficiary of the restrictive covenants at issue in this case.

In construing the intent of restrictive covenants, the courts look to the intent of the parties, "'which is to be collected from the whole instrument, and the circumstances surrounding its execution.'" (Citation omitted.) *White v. Legodais*, 249 Ga. 849, 849 (1) (295 SE2d 99) (1982). See also *Charter Club on River Home Owners Assn. v. Walker*, 301 Ga. App. 898, 900-901 (689 SE2d 344) (2009) (when construing restrictive covenants courts consider the entire document and not merely one provision in question). The restrictive covenants in this case are not ambiguous; the document was recorded by Lucas's predecessor-in-interest, and states that the easements and restrictions are for the benefit of that owner as well as the "subsequent owners and the successors in title" to the real property identified in the Declarations. The document states the Declarations "may be enforced by any Owner," and further states the

16

Declarations may not be amended to modify the rights or obligations relating to any real property described in the document "without the prior written consent of each Owner and Mortgagee shown by the Public Land Records to have a recordable interest in such Tract unless otherwise provided herein." The clear intent of the recorded document is to create burdens and benefits for the owners and others with a recordable interest in the various tracts of the property covered by the Declarations. The Foundation is not a successor-in-title to any tract of the real property identified in the Declarations, and its short-term lease does not convey a recordable interest in the property.

Nevertheless, the Foundation argues that the terms of the Declarations in this case demonstrate the Foundation is an express third-party beneficiary. The recorded document is comprised of three parts, and after carefully examining the document to determine if the Foundation's assertion is supported by the record, we conclude it is not. Part I of the Declarations sets forth "Preliminary Matters." Section 1.2 in Part I, titled "Purpose and Binding Effect," states "it is intended and understood" that the burdens and benefits of the easements and restrictions are "binding upon and inure to the benefit of the record owner in fee simple (the 'Owner') of each . . . Tract and the heirs, executors, legal representatives, successors, successors-in-title, and assigns of such Owner."

17

Section 1.4 (a) (viii) states that the Declarations may be enforced by any "Owner." Part II sets forth the easements created by the document. They include, among other things, driveway easements, parking easements, and drainage easements, each of which the Foundation claims will be violated by any construction authorized by the rezoning ordinance. Part III sets forth "Restrictions." Section 3.1 in Part III, titled "Effect and Purpose," includes the provision that each tract covered by the Declarations shall be leased subject to the restrictive covenants applicable to that tract. It further states:

> The Restrictions shall operate as covenants running with the title to the lands benefit[t]ed and burdened thereby, shall inure to the benefit of and be binding upon the Parties hereto and their respective successors-in-title, and all those holding under them, and shall survive the sale or other transfer of the ownership of any Tract described herein . . . .

We reject the argument that this language in Section 3.1 reflects an intent to make a short-term tenant of a title holder a beneficiary of the restrictive covenants. As noted, Section 1.2 of the Declarations, addressing their "binding effect," clearly expresses the document's intent for the easements and restrictions to inure to the benefit of the record owners and their successors-in-title and those holding under them. The Foundation holds no interest in the

18

title to the benefitted land. Its rights derive solely from its lease, which grants it only a license to use the leased premises pursuant to the lease's terms.

At other places in the Declarations the phrase "holding under" is used with regard to burdens imposed by the easements and restrictive covenants. For example, in the sections relating to easements for the use of garbage facilities, the owners of certain lots covered by the Declarations are obligated to pay certain other lot owners a share of the amount charged for the lease of a dumpster that is to be placed on the lots, but only during "such time as any building located on [the identified lots whose owners are obligated to share dumpster rental charges are] physically occupied by Owner or any Person holding under such Owner, including without limitation any tenant, employee, agent or invitee of such Owner." It makes sense that the identified lot owners are obligated to pay for garbage collection expenses only during periods when their property is physically occupied by a person or entity lawfully entitled to occupy it, such as a tenant. We conclude the phrase "holding under" as used in these sections of the Declarations does not indicate a general intent to grant status as a beneficiary of easements and restrictions to a short-term tenant, given the other terms of the document that expressly limit the burdens and benefits of the covenants to the fee simple owners and their successors-in-title.

The Foundation also cites to other provisions of the Declarations that prohibit the owner, and persons "holding under" an owner, from obstructing a driveway or a parking easement. The Foundation argues that this shows it is burdened by the terms of those easements, and thus it must also be deemed to benefit from the easements and have a right to enforce them. But the driveway and parking easements do not, in fact, establish that a tenant is burdened by the Declarations. Instead, these easements demonstrate that the *owners* are obligated to prevent others who are in lawful possession of their property from violating the terms of the easements which bind the owner, or that the owners will be deemed to have violated the terms of the easements if an owner's "tenant, employee, agent or invitee" obstructs a parking or driveway easement. But the Foundation fails to demonstrate it is burdened by the terms of the Declarations.

The Foundation is not a party to the recorded Declarations. It is, however, a party to its lease, which contains no reference to the Declarations and does not obligate the Foundation to comply with its terms. Although the Declarations may reasonably be read as requiring owners to lease the property subject to the restrictions set forth in the document, the Foundation fails to show, and does not even allege, that it relied upon the terms of the Declarations

or the benefits that inured to its landlord, Lucas (or even those who "hold under" Lucas), pursuant to the terms of that document when it executed the lease.

The Foundation also argues it is not unfair to subject Lucas to the terms of the declarations and easements. While that may be true, the Foundation fails to demonstrate it has standing to enforce the terms of the document. In fact, the Declarations expressly state that an owner of a tract covered by the agreement may enforce it. It identifies no other person or entity that is entitled to enforce its terms. As stated earlier, the Foundation may have a cause of action against Lucas for breach of the lease agreement, but it has not demonstrated a right to enforce the Declarations against Lucas, the owner of the property who seeks to have its property rezoned. In fact, a short-term tenant lacks standing to challenge enforcement of the terms of recorded restrictive covenants that attach to the title of the leased property. *Bowman v. Walnut Mountain Property Owners Assn, Inc.*, 251 Ga. App. 91 (553 SE2d 389) (2001). See also *Turner Advertising Co. v. Garcia*, 252 Ga. 101, 102 (1) (311 SE2d 466) (1984) ("To maintain an action to enforce restrictive covenants, an individual must be the owner of, or have a direct interest in, the premises."). We reject the assertion that the Foundation holds rights under the Declarations

that establish its standing to challenge the County's zoning decision in this case. Again, we conclude the Foundation has failed to demonstrate a substantial interest in the zoning decision, one of the two requirements under the "substantial interest-aggrieved citizen" test to establish standing to challenge this zoning decision.[14] Zoning decisions require certainty and finality, and a party whose only claim to an interest in a zoning decision is that its short-term usufructuary interest in the subject property will be damaged shall not be entitled to delay the enforcement of a duly rendered zoning decision.[15]

A trial court's determination on the issue of standing in a zoning case will not be disturbed unless its factual determinations are clearly erroneous. *City of Marietta v. Traton Corp*., 253 Ga. 64, 65 (1) (316 SE2d 461) (1984). And the trial court's application of law to the facts is subject to de novo

_____

[14] Consequently, we need not address whether the Foundation has satisfied the second requirement of the standing test — that its interest must be in danger of suffering some special damage not common to all similarly situated property owners. Under this Court's precedent, both prongs of the standing test must be satisfied. See *DeKalb County v. Wapensky*, supra, 253 Ga. at 48 (1).

[15] The analysis will be different if the challenger to a zoning decision is a long-term tenant who is the holder of an estate in real property, in which case the challenger may be able to meet the first prong of the standing test and show it has a substantial interest in the rezoning decision. Likewise, if, as in *Barton v. Atkinson*, supra, the restrictive covenants that burden the property involved in the zoning decision expressly include lessees within the definition of those to whom the benefits of the restrictions run, even a short-term tenant may be able to demonstrate standing to challenge a zoning decision that the tenant claims will adversely impact its rights under restrictive covenants. Those facts are not present in this case, however.

22

appellate review.  See *Murray v. Murray*, 299 Ga. 703, 705 (791 SE2d 816) (2016).  Although the trial court's order in this case granting the County's motion to dismiss did not expressly apply the "substantial interest-aggrieved citizen" test when it reached the conclusion that the Foundation lacked standing to challenge the zoning decision, no "magic language" is necessary in an order finding a party lacks standing to challenge a zoning decision.  What matters is that the trial court considered the relevant factors and arrived at the proper conclusion.

3.    Standing, and its requirement "that a person claiming to be aggrieved have a 'substantial interest' in a zoning decision," also applies to a party who seeks equitable relief in an attack on a zoning determination.  (Citation and punctuation omitted.)  *Massey v. Butts County*, 281 Ga. 244, 245 (637 SE2d 385) (2006) (seeking injunctive and declaratory relief).  See also *Tate v. Stephens*, 245 Ga. 519, 520-521 (265 SE2d 811) (1980).  The Foundation asserts that this standard applies only to claims for mandamus relief pursuant to OCGA § 9-6-24, relating to the interest required to enforce a public right; and it claims its complaint nevertheless states a claim for mandamus relief pursuant to OCGA § 9-6-25, which states that a plaintiff may enforce a private right by mandamus if it can "show pecuniary loss for which

he cannot be compensated in damages." We note, however, that the order dismissing the petition for writ of mandamus references a pending action filed by the Foundation against Lucas, and suggests that the Foundation's claim for relief should be pursued in this pending action, in which the Foundation seeks damages for breach of contract and also injunctive relief. We reject the Foundation's assertion that the trial court erred in dismissing its claim for mandamus relief because it will suffer pecuniary loss for which it cannot be compensated in damages in this separate pending action. As discussed above, even though the Foundation has demonstrated no right to contest the rezoning decision, if the Foundation can show that its contractual rights are or will be violated or damaged by changes Lucas makes to its real property pursuant to the rezoning decision, the Foundation may be entitled to monetary compensation or other relief.

In any event, mandamus relief is available only if the claimant establishes both that "(1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citation and punctuation omitted.) *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 800 (2) (b) (ii) (770 SE2d 832) (2015). Because the Foundation's trial court petition fails to demonstrate it has a

24

substantial interest in the zoning decision, we have concluded it lacks standing to mandamus relief. Accordingly, we affirm the trial court's order granting Glynn County's motion to dismiss the Foundation's petition for a writ of mandamus.

*Case No. S17A1163*

4. The County's motion to dismiss sought dismissal of the complaint, not simply dismissal of the claims against the County. The trial court granted that motion to dismiss. Accordingly, the first dismissal order disposed of the entire case and was a final order. The later order granting Lucas's motion to dismiss is, therefore, a nullity, and is vacated.

Judgment affirmed in Case No. S17A0405. Judgment vacated in Case No. S17A1163. All the Justices concur.

Decided June 19, 2017.

Mandamus. Glynn Superior Court. Before Judge Scarlett.

Weissman, P.C., Frank O. Brown, Jr.; Butler Snow, Frank M. Holbrook, for appellant.

Brown Reddick Bumgartner Carter Strickland & Watkins, Bradley J. Watkins, Amanda L. Szokoly; Aaron W. Mumford, for Glynn County.

Catts & Brooks, Austin E. Catts, Todd C. Brooks, for Lucas Property Holdings III and Arthur M. Lucas.