# FOURTH DIVISION
## DILLARD, C. J.,
## DOYLE, P. J., and MERCIER, J.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2019**

# In the Court of Appeals of Georgia

A18A1951. CARSON, JR. et al. v. BROWN et al.

A18A1978. CARSON, JR. et al. v. BROWN et al.

A18A1979. BROWN et al. v. CARSON, JR. et al.

DILLARD, Chief Judge.

These three consolidated appeals concern the partial grant of a motion for judgment on the pleadings with respect to an action by E. Howard Carson, Jr. and Red Bull Holdings II, LLC (collectively, "Carson") against the director of the Forsyth County Department of Planning and Community Development, Tom Brown, in his individual and official capacities, and against the planner technician of the same department, Carroll Williams, in her individual and official capacities (collectively, "Brown and Williams"). Carson filed a "petition for mandamus" seeking to compel Brown and Williams to process his application for a land-disturbance permit

submitted in anticipation of developing certain real property in Forsyth County, and the trial court subsequently partially granted Brown and Williams's motion for judgment on the pleadings.

The procedural history of the various appeals will be further discussed *infra*, but in both Case Numbers A18A1951 and A18A1978, Carson argues that, in granting the motion, the trial court erred by (1) ruling that he cannot challenge the constitutionality of a Forsyth County moratorium on certain land-disturbance applications via a petition for mandamus; (2) ruling that his challenge to the constitutionality and legality of the County's moratorium on certain land-disturbance applications really sought declaratory judgment, which was barred by sovereign immunity; and (3) denying his petition for mandamus and dismissing the action against Brown and Williams in their individual capacities. And in Case Number A18A1979, Brown and Williams cross-appeal, arguing that, in partially granting their motion for judgment on the pleadings, the trial court erred in (1) finding that Carson's action was not barred by *res judicata*; (2) finding that Carson's land-disturbance application was not clearly rejected; and (3) failing to dismiss the action for a failure to first exhaust administrative remedies. For the reasons set forth *infra*, we affirm in

part and reverse in part as to Case Numbers A18A1951 and A18A1978, and affirm as to Case Number A18A1979.

1. *Jurisdiction.* Before reaching the merits of the various appeals, we must first address our jurisdiction to entertain these cases, which Brown and Williams have challenged from the outset.[1] To that end, it is necessary to first detail how the appeals reached this Court.

(a) *Case Numbers A18A1978 and A18A1979.*

In Case Number A18A1978, Carson initially filed an application for discretionary appeal with the Supreme Court of Georgia, which then transferred the application to this Court. After reviewing the application for a discretionary appeal, we granted it after concluding that Carson had a right to a *direct* appeal under OCGA § 5-6-34 (a) (7), which provides, in relevant part, for direct appeals to this Court from "[a]ll judgments or orders granting or refusing to grant mandamus[.]"

Following our grant of Carson's application on this basis, Brown and Williams filed a motion for reconsideration, arguing that Carson was required to file an

---

[1] *See, e.g., Southall v. State,* 300 Ga. 462, 462 (1) (796 SE2d 261) (2017) ("[I]t is the duty of this Court to inquire into its jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction." (punctuation omitted)); *State of Ga. v. Int'l Keystone Knights of the Ku Klux Klan, Inc.,* 299 Ga. 392, 396 (2) (788 SE2d 455) (2016) (same).

application for discretionary appeal under OCGA § 5-6-35 (a) (1) because he was appealing the trial court's review of a local administrative agency's decision, citing *Selke v. Carson*.[2] We denied the appellees' motion for reconsideration. Thereafter, Brown and Williams filed their cross-appeal in this Court, which was docketed as Case Number A18A1979.

(b) *Case Number A18A1951.*

As discussed *supra*, in Case Number A18A1978, Carson initially filed an application for discretionary appeal in the Supreme Court of Georgia; but he did so out of an abundance of caution after also filing a direct appeal in Case Number A18A1951 (docketed in the Supreme Court as Case Number S18A0817). In light of the Supreme Court of Georgia's transfer of the application in Case Number A18A1978 to this Court, Carson filed a motion to transfer his direct appeal in A18A1951 from the Supreme Court to this Court as well, and the Supreme Court granted that motion.

With three appeals then pending in this Court, we granted a consent motion by the parties to consolidate the cases. Accordingly, the issues and parties' arguments in Case Numbers A18A1978 and A18A1951 are one and the same.

---

[2] 295 Ga. 628 (759 SE2d 853) (2014).

(c) *Our jurisdiction to entertain these appeals*.

(i) *The right to a direct appeal*.

Brown and Williams continue to challenge our earlier determination that Carson had a right to directly appeal in Case Number A18A1978 and, by extension, Case Number A18A1951. They also concede that, if this Court lacks jurisdiction over A18A1978, it likewise lacks jurisdiction to entertain their cross-appeal in A18A1979.[3] Brown and Williams assert that Carson was required to file an application for discretionary appeal under OCGA § 5-6-35 (a) (1) because his appeal was from the trial court's review of a decision by a local administrative agency. And once again, they rely on *Selke v. Carson*[4] in support of this argument.

---

[3] *See* OCGA § 5-6-38 (a) ("In civil cases, the appellee may institute cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant; and the appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him; and in no case shall the appellee be required to institute an independent appeal on his own right, although the appellee may at his option file an independent appeal."); *see also Dep't of Transp. v. Douglas Asphalt Co.*, 297 Ga. App. 511, 514 (677 SE2d 728) (2009) (dismissing cross-appeal that had no independent basis for jurisdiction after the dismissal of the main appeal); *Serco Co. v. Choice Bumper, Inc.*, 199 Ga. App. 846, 846 (406 SE2d 276) (1991) (holding that appellant's voluntary withdrawal of direct appeal required dismissal of cross-appeal, which had no independent basis for jurisdiction).

[4] 295 Ga. 628 (759 SE2d 853) (2014).

5

In *Selke*, the Supreme Court of Georgia dismissed a direct appeal filed by former deputy sheriffs who had been required to file an application for discretionary review. The appellants in *Selke* were terminated from their positions without notice and appealed their terminations to the Forsyth County Personnel Services Director, requesting that their appeals be forwarded to the Forsyth County Civil Service Board.[5] The Personnel Services Director denied the appeals because the sheriff claimed that the former deputies were terminated due to a reduction in force, and layoffs were not an appealable event; thus, the director refused to forward the appeals to the Board for its consideration.[6] The former deputies then filed a petition for writ of mandamus against the director, the board, and the county, seeking to compel the director to forward the appeals to the board.[7] The superior court thereafter granted a motion to dismiss that was filed by the appellees in *Selke*, and the appeal of the grant of that motion to dismiss was brought before our Supreme Court by a direct appeal.[8]

---

[5] *Id.* at 628-29.

[6] *Id.*

[7] *Id.* at 629.

[8] *Id.*

6

The Supreme Court dismissed the appeal in *Selke* after determining that the director "made an administrative department decision refusing to forward appellants' appeals to the Civil Service Board"[9] and because that "decision was reviewed by the superior court, it was incumbent upon appellants to proceed [to the Supreme Court] by discretionary appeal."[10] Thus, the *Selke* Court recognized that while the general rule is that "judgments or orders granting or refusing to grant mandamus are appealable directly[,]"[11] a direct appeal will not lie "if the underlying subject matter of a mandamus petition concerns an administrative ruling which is reviewed by a superior court[.]"[12] And the Court further explained that OCGA § 5-6-35 (a) (1) "requires an appellant to file an application for a discretionary appeal from a decision

[9] *Id.*

[10] *Id.*

[11] *Id.* (citing OCGA § 5-6-34 (a) (7), which provides that "[a]ppeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state: . . . All judgments or orders granting or refusing to grant mandamus or any other extraordinary remedy, except with respect to temporary restraining orders").

[12] *Id.*; *see Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 255 (564 SE2d 715) (2002) ("[T]he underlying subject matter listed in the discretionary appeal statute prevails over the procedural judgment listed in the direct appeal statute.").

of a superior court reviewing the decision of a state or local administrative agency."[13]

Stated another way, when "both the direct and discretionary appeal statutes are implicated, it is always the underlying subject matter that will control whether the appeal must be brought [under] OCGA § 5-6-34 or OCGA § 5-6-35."[14]

Here, the record shows that in March 2016, Carson purchased Forsyth County property in the name of Red Bull and, at the time of purchase, that property was zoned in an RES3 district, which allowed for property to be developed into residential lots with a 9,000-square-foot minimum size. Later, in August 2016, the Forsyth County Board of Commissioners imposed a 30-day moratorium on land-development permits for RES3 property that sought to develop lots with a size of less than 14,750 square feet.[15] Then, on September 7, 2016, Carson submitted a land-disturbance permit application to the Forsyth County Department of Planning and Community

---

[13] *Selke*, 295 Ga. at 629.

[14] *Ferguson*, 275 Ga. at 257 (1); *see Voyles v. Voyles*, 301 Ga. 44, 45 n.2 (799 SE2d 160) (2017) ("This case involves the denial of a motion to set aside that, but for the fact that it is a domestic relations case, would be directly appealable because it is based on an alleged lack of notice of a hearing rather than on a non-amendable defect in the record. The domestic relations subject matter of the case, however, requires a discretionary application in this context." (citations omitted)).

[15] The moratorium was later modified to allow for development of certain residential properties with lots at a minimum size of 10,000 square feet.

Development, seeking to develop the subject property with residential lots at a minimum of 9,000 square feet.

The department initially accepted the application, but the next day, Williams, a planner technician, released the application back to Carson to make certain corrections. With the application amended accordingly, Carson resubmitted it, but on September 9, 2016, Williams wrote that she was "releasing this plan back to [Carson] because of the moratorium on RES3 LDP applications." Even so, she still asked Carson to provide additional information. Carson complied with this request, and the application remained pending after resubmission. Thereafter, when Carson asked Williams in writing to process the application, he received a response from the county attorney, who advised Carson that the application would not be processed and that the September 9, 2016 communication from Williams had been a rejection of same.

As previously detailed, Carson proceeded by filing a verified petition for writ of mandamus against Brown and Williams, individually and in their official capacities, seeking an order declaring the moratorium void and *ultra vires*, and directing Brown and Williams to process the land-disturbance permit application. These appeals follow the trial court's partial grant of Brown and Williams's motion for judgment on the pleadings.

Looking to Brown and Williams's jurisdictional challenge on appeal, it is undisputed that the Forsyth County Department of Planning and Community Development is a "local administrative agency" for purposes of OCGA § 5-6-35 (a) (1).[16] What is in dispute is whether a "decision" of a local administrative agency is being reviewed.

In *State v. International Keystone Knights of the Ku Klux Klan, Inc.*,[17] the Supreme Court of Georgia provides a thorough explanation of what constitutes a "decision" for purposes of OCGA § 5-6-35 (a) (1),[18] explaining that:

> Considering the statutory text, its relevant context, the judicial precedents, and the usual understanding of American courts generally about administrative determinations of different sorts, we conclude that "decision"—as the term is used in OCGA § 5-6-35 (a) (1) with reference to administrative agencies—is most naturally and reasonably understood to refer to an administrative determination of an adjudicative nature.[19]

---

[16] *Cf. Int'l Keystone Knights of the Ku Klux Klan*, 299 Ga. at 399 (4) (a) ("No one disputes that the [Georgia] Department [of Transportation] is a 'state administrative agency' for the purposes of OCGA § 5-6-35 (a) (1), and in the context of this case, it quite clearly is.").

[17] 299 Ga. 392 (788 SE2d 455) (2016).

[18] *See generally id.* at 399-407 (4) (a).

[19] *Id.* at 404 (4) (a). Our Supreme Court further concluded that "formal adjudicative procedures" are not essential to reach a "decision" for purposes of

10

In reaching this conclusion, the Supreme Court of Georgia explained that it has "consistently . . . refused . . . to require applications in cases concerning executive determinations and those involving rulemaking or other determinations of a legislative nature."[20] And more recently, in *Schumacher v. City of Roswell*,[21] our Supreme Court reiterated this point by noting that it has "refused to require an application in . . . zoning-related cases that were not appealing *decisions* of administrative agencies."[22] In both *Schumacher* and *International Keystone Knights*, the Supreme Court cited *Mid-Georgia Environmental Management Group v.*

---

OCGA § 5-6-35 (a) (1). *See id.* at 404-05 (4) (a) ("Although a determination of an adjudicative nature is essential to an administrative 'decision' for the purposes of OCGA § 5-6-35 (a) (1), the [appellant] says that a 'decision' also must be marked by formal adjudicative procedures. We disagree. In the first place, we do not understand the usual and common usage of 'decision' to connote any particular degree of formality in the decisional process. Nor is any particular degree of formality inherent in the notion of adjudicative decisionmaking. . . . More important, our own precedents foreclose the idea that formal adjudicative procedures are essential to a 'decision,' as that term is used in OCGA § 5-6-35 (a) (1).").

[20] *Int'l Keystone Knights of the Ku Klux Klan*, 299 Ga. at 403-04 (4) (a) (footnotes omitted) (citing *Danbert v. N. Ga. Land Ventures*, 287 Ga. 495, 495 (697 SE2d 204) (2010); *Mid-Ga. Envt'l Mgmt. Grp. v. Meriwether Cty.*, 277 Ga. 670, 671-72 (594 SE2d 344) (2004); *Ga. Dep't of Transp. v. Peach Hill Props.*, 278 Ga. 198, 200 (599 SE2d 167) (2004)).

[21] 301 Ga. 635 (803 SE2d 66) (2017).

[22] *Id.* at 640 (2) (emphasis supplied).

11

*Meriwether County*[23] as an example of a determination that was *not* a decision for purposes of OCGA § 5-6-35.[24]

In *Mid-Georgia Environmental Management Group*, a landowner contacted Meriwether County to acquire a verification letter stating that the owner's proposed use of its property for development of a landfill complied with the county's zoning ordinance and solid waste management plan.[25] The letter also informed the county that the property owner believed the county's relevant zoning ordinance "had not been validly adopted and therefore the [c]ounty's only option was to issue the verification letter."[26] The county refused to issue the verification letter, asserting that its zoning ordinance *was* validly adopted and, thus, the property owner's proposed use of the land was impermissible.[27] Thereafter, the property owner filed both a declaratory judgment action as to the validity of the zoning ordinance, and a petition

---

[23] 277 Ga. 670 (594 SE2d 344) (2004).

[24] *See Schumacher*, 301 Ga. at 640 (2); *Int'l Keystone Knights*, 299 Ga. at 403-04 (4) (a).

[25] 277 Ga. at 670.

[26] *Id.*

[27] *Id.*

for writ of mandamus to require the county to issue the verification letter.[28] The trial

court entered declaratory judgment in favor of the county and denied the petition for

writ of mandamus, leading the property owner to seek review by the Supreme Court

of Georgia.[29]

Our Supreme Court determined in *Mid-Georgia Environmental Management*

*Group* that the property owner had a right to directly appeal the trial court's ruling on

the petition for writ of mandamus because the county's decision refusing to issue the

requested verification letter was *not* a "zoning *decision*" for purposes of OCGA § 5-

6-35.[30] And in the cases relied upon by our Supreme Court in reaching this

---

[28] *Id.* at 670-71.

[29] *Id.*

[30] *See id.* at 672 ("[W]e require an application to appeal in mandamus actions brought against county boards of commissioners where the decision under review is a zoning decision. Thus, only if the Board of Commissioners's decision refusing to issue the verification letter was a 'zoning decision' would an application be required in this case. This Court has previously accepted direct appeals where a property owner sought mandamus to require the issuance of a letter verifying that a proposed use is consistent with zoning and land use plans. Furthermore, the relevant zoning decision is the one that established the zoning for the site for the proposed landfill, and no one has ever sought review of this zoning decision." (footnotes omitted)); *see Fulton Cty. v. Congregation of Anshei Chesed*, 275 Ga. 856, 857 (1) (572 SE2d 530) (2002) ("In essence, this Court determined in [*Trend Dev. Co. v. Douglas County*, 259 Ga. 425 (383 SE2d 123) (1989)] and its progeny that a zoning decision made by a local government was the action of a local administrative agency within the

conclusion, the Court repeatedly found a right to directly appeal in situations in which a party sought mandamus to compel the issuance of verification letters, as opposed to challenging what it deemed a "zoning decision."[31]

Here, we must determine whether Williams's "release" of Carson's land-disturbance permit application back to him "because of the moratorium on RES3 LDP applications" and concurrent request for the provision of additional information

---

meaning of OCGA § 5-6-35 (a) (1), and an appeal from a superior court decision reviewing the local administrative agency's decision must come by way of application pursuant to § 5-6-35 (a) (1)."), *overruled on other grounds by City of Cumming v. Flowers*, 300 Ga. 820, 832 (6) (a) (797 SE2d 846) (2017).

[31] *Compare Enre Corp. v. Wheeler Cty. Bd. of Commissioners*, 274 Ga. 17, 17 (549 SE2d 67) (2001) (concerning direct appeal from the denial of a petition for writ of mandamus seeking to require the issuance of certificate of consistency with regional solid waste management plan); *Long v. FSL Corp.*, 268 Ga. 479, 479-80 (1) (490 SE2d 102) (1997) (holding that appeal from the grant of a petition for writ of mandamus seeking to require issuance of written approval for construction of a landfill was subject to direct appeal because case involved "not zoning, but a county's decision as a matter of its legislative policy to retain or waive a right given it by the legislature," (*i.e.*, "OCGA § 12-8-25 gives every county and municipality the power to withhold permission for the construction of a landfill in another jurisdiction but within half a mile of the first jurisdiction's border")); *Banks Cty. v. Chambers of Ga., Inc.*, 264 Ga. 421, 421-22 (444 SE2d 783) (1994) (concerning direct appeal from the grant of a petition for writ of mandamus seeking to require the issuance of a written verification letter), *with Trend Dev. Corp. v. Douglas Cty.*, 259 Ga. 425, 425-26 (1)-(2) (383 SE2d 123) (1989) (holding that an application for discretionary appeal is required in "appeals in zoning cases" in which a "zoning decision" is reviewed, and in which case concerned an application to rezone certain property, which application was denied).

14

constitute a "decision" for purposes of OCGA § 5-6-35. The Supreme Court of Georgia has previously permitted a direct appeal from a mandamus action in which a property owner sought issuance of a land-disturbance permit after no decision was made for at least three months after the application's submission, and the application was eventually rejected by the relevant city employee only after he was instructed by the board of commissioners not to issue the permit.[32] On the other hand, more recently, our Supreme Court granted an application for discretionary appeal in a case in which a property owner filed a petition for a writ of mandamus, seeking issuance of land-disturbance permits.[33]

The only discernable distinction between these Supreme Court precedents is that, in the direct appeal, the relevant city employee failed to make *any* decision on the application for *months* after its submission, the applicant filed a petition for a writ of mandamus, and the application was only officially denied the day before the

---

[32] *See City of Albany v. Oxford Solid Waste Landfill, Inc.*, 267 Ga. 283, 283 (476 SE2d 729) (1996).

[33] *See DeKalb Cty. v. Cooper Homes*, 283 Ga. 111, 111-13 (1) (657 SE2d 206) (2008); *see also JWIC, Inc. v. City of Sylvester*, 278 Ga. 416, 416-17 (1) (603 SE2d 247) (2004) (challenge brought by application for *interlocutory* appeal).

hearing on the applicant's petition for mandamus.[34] In the case brought by application

for discretionary appeal, the request for a land-disturbance permit was denied by the

county on the merits, and the applicant challenged the denial through the petition for

writ of mandamus.[35] And in this case, in which Carson's application was simply

"released" back to him due to a moratorium, we, like the trial court, conclude that no

[34] *See City of Albany*, 267 Ga. at 283.

[35] *See DeKalb Cty.*, 283 Ga. at 111-12 ("Appellee . . . had its application for interior side yard setback variances denied by the DeKalb County Zoning Board of Appeals (ZBA) and its application for land disturbance permits denied by the county's planning and development department."); *id.* at 114 (1) ("[T]he planning and development department denied the applications for building permits on the ground that there was no land development permit for the property on file, as required by . . . the county's zoning ordinance."); *see also JWIC, Inc.*, 278 Ga. at 416 (1) ("[Appellant] applied for a land disturbance permit with the City for the building of a 49-unit apartment complex on property located in the City's R-OI zoning district. [Appellant] contended that apartments constituted multi-family dwellings under the ordinance's definition of that term, and that, as multi-family dwellings were a permitted use as a matter of right in the R-OI district, apartments were permitted there. The City . . . contended that apartments were not permitted in the R-OI district, but instead were only permitted in the R-M Group Development zoning district. That district is a 'floating' district that does not appear on the City's zoning map, as do its eight other zoning districts, but it permits group development in each of the ordinance's eight actual districts by a special exception permit approved by the planning commission and the city council. The City contended that, as apartments were only mentioned in the ordinance as being permitted as part of a group development, apartments could only appear in such a district by grant of a special exception permit. The City never issued a land disturbance permit to JWIC, prompting JWIC to bring this action for injunctive, declaratory, and mandamus relief.").

clear "decision" was made on the merits of Carson's application. Instead, even Brown and Williams's explanation that the moratorium prevented acceptance of such applications supports this conclusion: if the application could not be accepted, no decision *could* be rendered. Thus, because no decision was made for purposes of OCGA § 5-6-35 (a) (1), the discretionary appeal procedure was not implicated.

(ii) *Whether an application for interlocutory appeal was required.*

Although we have concluded that no "decision" was made for purposes of OCGA § 5-6-35 (a) (1), Brown and Williams also argue that this Court lacks jurisdiction because Carson was required to follow the procedures for an interlocutory appeal because the trial court made no final ruling on the question of mandamus, and one claim remains pending below.[36]

---

[36] *See* OCGA § 9-11-54 (b) ("When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

17

The Supreme Court of Georgia recently rejected a similar argument when a county asserted that an appeal was subject to dismissal because the trial court's grant of a motion to dismiss was not a final order when "it did not adjudicate all the claims against the multiple parties in the case[.]"[37] But our Supreme Court found the "final order" statute, OCGA § 5-6-34 (a) (1), irrelevant because the trial court's order "also dismissed the . . . claim for mandamus relief, and therefore was, at the time the notice of appeal was filed, immediately and directly appealable to this Court [under] OCGA § 5-6-34 (a) (7)."[38] Accordingly, because the trial court dismissed a claim for mandamus as to Brown and Williams in their individual capacities, Carson was not

---

[37] *Stuttering Found., Inc. v. Glynn Cty.*, 301 Ga. 492, 493 (1) (801 SE2d 793) (2017).

[38] *Id.*; *see also Westberry v. Saunders*, 250 Ga. 240, 241-42 (3) (296 SE2d 596) (1982) (rejecting argument that direct appeal was subject to dismissal for failure to file an application for appeal because appeals taken under former codification of OCGA § 5-6-34 (a) (7) "may be appealed directly to this court without regard to a pending counterclaim" and "[n]o certificate of immediate review is necessary and the lack of a final judgment as to the counterclaim is no bar to this direct appeal" because former codification of OCGA § 5-6-34 (a) (7) "grants a privilege of direct appeal 'from all judgments or orders granting or refusing to grant mandamus or other extraordinary remedy,'" and case was concerned with dismissal of a petition for quo warranto, which is an extraordinary remedy).

required to follow the interlocutory appeal procedures and was, as we held *supra*, entitled to a direct appeal under OCGA § 5-6-34 (a) (7).[39]

Having concluded that we have jurisdiction over Carson's appeals, we will now proceed to considering his enumerations of error in Case Numbers A18A1951 and A18A1978.

2. *Case Numbers A18A1951 and A18A1978.* In both Case Number A18A1951 and Case Number A18A1978, Carson contends that the trial court erred in partially granting Brown and Williams's motion for judgment on the pleadings by (1) ruling that Carson cannot challenge the constitutionality of a Forsyth County moratorium on certain land-disturbance applications via a petition for mandamus; (2) ruling that his challenge to the constitutionality and legality of the County's moratorium on certain land-disturbance applications really sought declaratory judgment, which was barred by sovereign immunity; and (3) denying his petition for mandamus and dismissing the action against Brown and Williams in their individual capacities.

---

[39] *See supra* citations in note 38.

When reviewing a trial court's decision on a motion for judgment on the pleadings, we do so *de novo*, construing the complaint "in a light most favorable to the appellant, drawing all reasonable inferences in his favor."[40] And when, as in this case, a defendant files a motion for judgment on the pleadings "and does not introduce affidavits, depositions or interrogatories in support of the motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted."[41] A motion to dismiss for failure to state a claim, then, "should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the plaintiff's claim."[42] In this regard, the issue is whether "the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law,"[43] and "all well-pleaded material allegations of the

---

[40] *Hewell v. Walton Cty.*, 292 Ga. App. 510, 510-11 (664 SE2d 875) (2008) (punctuation omitted); *accord McCobb v. Clayton Cty.*, 309 Ga. App. 217, 217 (710 SE2d 207) (2011).

[41] *McCobb*, 309 Ga. App. at 217; *accord Hewell*, 292 Ga. App. at 511 (1).

[42] *McCobb*, 309 Ga. App. at 217; *accord Hewell*, 292 Ga. App. at 511 (1).

[43] *Hewell*, 292 Ga. App. at 511 (1).

opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false."[44]

So viewed, and as discussed *supra*, the complaint alleges that in March 2016, Carson was interested in purchasing 17.6 acres of land in Forsyth County zoned in the RES3 district, which permitted development into a residential subdivision with lots at a minimum size of 9,000 square feet. Carson thereafter purchased the property on March 29, 2016, and titled it in the name of Red Bull Holdings. For the next three months, in coordination with the Forsyth County Water and Sewer Department, Carson pursued plans to develop the subject property into a residential subdivision with lots at a minimum size of 9,000 square feet.

On August 9, 2016, during a work session of the Forsyth County Board of Commissioners, the Board voted on oral motion to approve the imposition of a 30-day moratorium on land-development permits for RES3 properties when applicants sought to "develop the RES3 at any lot square footage less than our existing table of 14,750 square feet and that this item is approved as time sensitive." According to

---

[44] *Sherman v. Fulton Cty. Bd. of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010); *accord Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 86-87 (1) (764 SE2d 398) (2014); *see Hewell*, 292 Ga. App. at 511 (1) ("All well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false[.]" (punctuation omitted)).

Carson's complaint, the referenced table, Table 11.2 (b), in footnote 1 of the Forsyth County Unified Development Code as it was in effect at the relevant time, provided as follows:

> RES3 rezoning applications applied for and/or approved by the Board of Commissioners between the following dates may comply with the minimum lot size requirements as follows: (a) prior to November 1, 2007: 9,000 square feet; (b) between November 1, 2007 and July 18, 2013: 14,500 square feet; (c) between July 18, 2013 and October 2, 2014: 10,000 square feet.

The August 9th work session was held without notice to the public or opportunity to be heard, and the session was not memorialized in an ordinance or resolution.

At another work session on August 23, 2016, the Board voted to approve a verbal motion to modify the previously approved moratorium so as to exempt land-disturbance permit applications for RES3 properties that sought to develop lots at a minimum size of 10,000 square feet. The modification also provided that a public hearing on the continued moratorium would take place on September 1, 2016. This second work session was also held without notice to the public or opportunity to be heard. But on August 14, 2016, the County advertised a notice of public hearing to be held on September 1, 2016, to consider possible extension of the moratorium until

December 7, 2016. Thereafter, on September 1, 2016, the Board adopted a resolution titled "A Resolution of the Forsyth County Board of Commissioners Extending until December 7, 2016, an existing moratorium on acceptance of applications for land disturbance permits on certain RES3 zoned parcels."

On September 7, 2016, Carson submitted a land-disturbance permit application to the Forsyth County Department of Planning and Community Development, seeking to develop the subject property into a residential subdivision with 39 lots. The application was accepted by the Department and assigned a file number, and Carson paid the required filing fee and submitted the required surveys and plans. The following day, Williams told Carson that she was "releasing this plan back to you to make the following correction[s]." Under the Forsyth County Unified Development Code, the "Land Disturbance Permit Plan Review Procedures" provides as follows:

> Each Land Disturbance Permit (LDP) application must be approved and a LDP issued within twelve (12) months of the initial plan submittal date. Failure to obtain a permit within twelve (12) months will require the submittal of a new Land Disturbance Permit application . . . . [C]omments will be returned to the developer and/or their agent for corrections by their engineer and/or surveyor. After the departmental comments have been addressed, and corrections to the plans are made, the developer and/or their agent will return to each reviewing department to provide evidence that such changes have been made.

23

Thus, in response to Williams's communication, Carson made the requested corrections and resubmitted the application.

On September 9, 2016, Williams responded to the resubmitted application as follows: "I am releasing this plan back to you because of the moratorium on RES3 LDP applications." Nevertheless, Williams asked Carson to provide information on a paid sewer reservation, "or any other information regarding the RES3 zoning," and said that the plan would need to be resubmitted with the requested information. Meanwhile, that same day, Carson paid a plan review fee to the Fire Marshal's Office for review of the application plans. And following the September 9, 2016 communication from Williams, Carson's LDP application "remained open and pending and [Carson] investigated the alleged moratorium, the availability of sewer for the Property, the RES3 zoning, and the pending Application." Then, nearly one month after Williams's communication with Carson, on October 6, 2016, the Forsyth County Board of Commissioners adopted an amendment to the Unified Development Code to partially delete footnote 1 containing Table 11.2 (b), except for the subparagraph permitting 10,000 minimum square foot residential lots approved after July 18, 2013.

Carson amended the LDP application on January 30, 2017, to update the property-owner information. Then, on February 7, 2017, Carson directed correspondence to Williams's September 9, 2016 response, providing additional information and demanding that the LDP application be processed for approval. Within that correspondence, Carson alleged that the moratorium was *ultra vires*, illegal, unconstitutional, and otherwise null and void. In response to this communication, the Forsyth County Attorney responded to Carson, stating that the LDP application would not be processed because Williams's September 9, 2016 communication amounted to a rejection of the application.

Carson proceeded by filing his verified petition for writ of mandamus in the Superior Court of Forsyth County on March 10, 2017, in which he challenged "the constitutionality of the Alleged Moratorium facially, and as applied to [him] and the Property." He also alleged that the moratorium was "ultra vires, null and void," and that Brown and Williams had "failed and/or refused to take any action on [the LPD] Application." Thus, because the moratorium "is ultra vires, illegal, null, void and unconstitutional," Carson asserted that he was entitled to have the LPD application "processed without regard to the Alleged Moratorium."

Carson's petition set forth three claims for mandamus. The first was against Brown and Williams in their official capacities, seeking to require them to "perform their official duties and to process [the] Application in a manner that complies with the laws of the State of Georgia as well as the County's own Code." The second and third claims were against Brown and Williams in their individual capacities. And in the ultimate prayer for relief, Carson asked the court to, *inter alia*, "issue an order granting a Writ of Mandamus finding that the Alleged Moratorium is ultra vires, illegal, null, void and/or unconstitutional and compelling Defendants to process the Application without regard to the Alleged Moratorium and in accordance with the law in effect when the Application was submitted[.]"

Brown and Williams answered the petition, and subsequently filed a motion for judgment on the pleadings , arguing that (1) they were entitled to sovereign immunity in their official capacities; (2) the issue of mandamus was barred by claim preclusion due to a previously filed, but voluntarily dismissed, lawsuit on behalf of Red Bull against the Forsyth County Board of Commissioners; and (3) the individual claims were subject to dismissal due to a failure to exhaust administrative remedies, and because the plaintiffs had no clear right to the relief.

Carson opposed the motion for judgment on the pleadings, again arguing that the moratorium was *ultra vires*, illegal, null, void, and unconstitutional, and, thus, that he was entitled to have the LDP application processed. In response to Carson's opposition, Brown and Williams argued that although a claim for mandamus is not barred by sovereign immunity, Carson's petition additionally sought, by way of requesting a "finding," declaratory judgment as to the validity or non-validity of the moratorium, and, they asserted, declaratory judgment *was* barred by sovereign immunity.

On December 6, 2017, the trial court issued its order granting Brown and Williams's motion for judgment on the pleadings in part. The trial court agreed with Brown and Williams that Carson's petition was barred by sovereign immunity to the extent that it sought declaratory judgment as to the validity or non-validity of the moratorium. But to the extent the petition sought relief via mandamus to have the LDP application processed, the court concluded that the claims were not barred by sovereign immunity. Nevertheless, the court concluded that Carson could not pursue mandamus against Brown and Williams in their individual capacities because "processing the application and rendering a denial or approval occurs in [their] official capacities." The court further directed that if Carson could "prove that

27

[Brown and Williams] failed to comply with the UDC and issue a final rejection of [the] application within the one-year period, then mandamus relief could be appropriately granted[.]" Altogether, the court granted the motion for judgment on the pleadings as to declaratory relief and for mandamus against Brown and Williams in their individual capacities; but the court denied the motion as to mandamus against Brown and Williams in their official capacities. These appeals follow.

(a) *Constitutional Challenge via Mandamus*. First, Carson argues that the trial court erred in ruling that he could not challenge the constitutionality of the relevant Forsyth County moratorium via a petition for writ of mandamus.[45] We disagree.

None of the cases Carson relies upon support the position that he may, via a petition for mandamus, have the moratorium declared *ultra vires*, illegal, null, void, and unconstitutional when those cases either dealt with review of the criteria relied upon on the face of the law to deny approval[46] or were actions not based solely in

---

[45] We pause to note that these appeals were transferred to us from the Supreme Court of Georgia because it determined that the issues on appeal did not implicate its constitutional-question jurisdiction, and because "there appeared to be no other basis for invoking" its jurisdiction.

[46] *See Hixon v. Walker Cty.*, 266 Ga. 641, 641 (468 SE2d 744) (1996) ("The only authority cited for the denial of the applications was those sections of the Regulations which generally provided . . . the 'Purpose' thereof[.] . . . The 'Purpose' sections appear only in the preamble of the Regulations and there is no

28

mandamus.[47] And indeed, Brown and Williams point us to Supreme Court of Georgia precedent strongly suggesting that Carson *cannot* challenge the moratorium in this fashion.

---

cross-reference to those subsequent sections of the Regulations which address the substantive requirements for obtaining a building permit. . . . The 'Purpose' sections of the Regulations contain no standard to control the discretion of the Planning Commission. It follows that the trial court erred in refusing to grant a writ of mandamus, since it would violate due process to rely upon the 'Purpose' sections of the Regulations as a substantive basis for the denial of the . . . application for the building permits." (punctuation omitted)); *FSL Corp. v. Harrington*, 262 Ga. 725, 725 (425 SE2d 276) (1993) ("The Superior Court of Forsyth County denied . . . Appellant['s] petition for mandamus to require the Board of Commissioners . . . to approve a special-use permit for a sanitary landfill. Because the zoning ordinance authorizing the permit provides no ascertainable limits on the Board's discretion to grant or deny applications, we reverse the trial court's order."); *Crymes v. DeKalb Cty.*, 258 Ga. 30, 30-31 (364 SE2d 852) (1988) ("The ordinance's provision for the Board's discretionary approval or disapproval of the landfill is invalid. . . . The DeKalb County Ordinance sets forth no criteria by which the Board might exercise its discretion in approving or disapproving the landfill. The Board's refusal to approve the landfill constitutes an act of discretion without any articulable, objective ground of support[.] . . . Because he had a clear legal right to the Board's approval of his landfill, the trial court erred by denying [the appellant's] petition for mandamus.").

[47] *See Tilley Prop. Inc. v. Bartow Cty.*, 261 Ga. 153, 153 (401 SE2d 527) (1991) (noting that complaint sought "among other things, the rezoning of the property" and that complaint was "amended and the appellants prayed for a writ of mandamus"); *Davidson Mineral Props., Inc. v. Monroe Cty.*, 257 Ga. 215, 215 (357 SE2d 95) (1987) ("[Appellant] brought this action against Monroe County and its Board of Commissioners seeking mandamus, as well as *declaratory*, injunctive, and other relief." (emphasis supplied)).

29

In *Harper v. Burgess*,[48] our Supreme Court affirmed the denial of mandamus brought by a petitioner who "sought to compel the Clerk of the Superior Court . . . to file a complaint for divorce without requiring her to make a 'cost deposit'" because the petitioner claimed that the law requiring the payment of costs was unconstitutional.[49] The Court explained that

> the real and substantial relief which the plaintiff seeks, that is, the right to file a complaint for divorce on a pauper's affidavit without first making the advance deposit demanded by the clerk was denied to her by the defendant clerk of the superior court because he considered the law to forbid him to file her complaint under those circumstances; and that the right to this real and substantial relief depends upon a declaration by the court that the law upon which the clerk relied in refusing to file her complaint is unconstitutional.[50]

In affirming the denial of mandamus to the petitioner, the Court concluded that she had "as another available remedy, an action for declaratory judgment to test the validity of the statute which she claims is unconstitutional, and that she cannot, so long as such a remedy is available to her, resort to the harsh remedy of mandamus to

---

[48] 225 Ga. 420 (169 SE2d 297) (1969).

[49] *Id.* at 420.

[50] *Id.* at 422 (3).

compel the clerk to file her petition for divorce."[51] Prior to doing so, the Court explained that "[a] declaratory judgment action is an especially and particularly appropriate method of determining a controversy with respect to the constitutionality of an Act of the legislature"[52] and that "[a]n action for a declaratory judgment has been held by this court to be an available remedy to test the constitutionality of a statute in a case where an actual controversy exists with respect thereto."[53]

So too here. To the extent that Carson seeks to have the moratorium at issue declared *ultra vires*, illegal, null, void, and unconstitutional so as to compel Brown and Williams to process his application for a land disturbance permit without reference to the moratorium that they contend *bars* processing the application, the method of seeking such a determination was via a declaratory judgment action, not mandamus.[54] Accordingly, the trial court did not err in determining that the portion

---

[51] *Id.*

[52] *Id.*

[53] *Id.*; *accord Higdon v. City of Senoia*, 273 Ga. 83, 85 (1) (583 SE2d 39) (2000); *see* OCGA § 9-4-1 ("The purpose of this chapter is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and this chapter is to be liberally construed and administered.").

[54] *See Union Cty. v. CGP, Inc.*, 277 Ga. 349, 350 (1) (589 SE2d 240) (2003) ("[T]he trial court's order, though it clearly held mandamus was denied, awarded

31

of Carson's petition seeking to have the moratorium declared invalid was, in actuality, seeking a declaratory judgment because that specific request could not be brought by way of an action solely in mandamus.

(b) *Constitutional Challenge Barred by Sovereign Immunity*.

Carson next argues that the trial court erred by ruling that the challenge to the moratorium was barred by sovereign immunity. But because we agree with the trial court that Carson's request that it declare the moratorium *ultra vires*, illegal, null, void, and unconstitutional really sought declaratory judgment against Brown and Williams in their official capacities, the trial court did not err in concluding that this

---

[appellee] under the heading of declaratory judgment exactly what [appellee] sought in the mandamus portion of its complaint, and based that relief on the ground asserted in the mandamus portion of the complaint, that [appellee] had obtained a vested right to continue the development without the impact of the flood ordinance. Mandamus is used to compel an official to perform a duty. Ordering Union County to issue the building permits [appellee] sought thus amounts to the grant of mandamus." (citations & punctuation omitted)); *see also City of Atlanta v. McLennan*, 237 Ga. 25, 25 (226 SE2d 732) (1976) ("The [declaratory judgment] issue for decision by the trial judge was whether the zoning ordinance as applied to the subject property (residential uses only) was confiscatory, arbitrary, and unreasonable to the extent of unconstitutionally depriving the appellees of their property and its reasonable use[.]"); *Buckler v. DeKalb Cty. Bd. of Commissioners*, 299 Ga. App. 465, 465-66 (683 SE2d 22) (2009) ("[T]he [appellants] filed . . . a complaint for mandamus and a declaratory judgment with the trial court, seeking an order compelling the county to issue them a certificate of appropriateness . . . for their proposed development and seeking a ruling that the county's designation of the historic district was invalid.").

request was barred by sovereign immunity. Suits for declaratory relief against public officials in their official capacities are barred by sovereign immunity.[55]

(c) *Dismissal of Mandamus Against Brown and Williams Individually.*

Finally, Carson contends, and Brown and Williams concede, that the trial court erred in dismissing the claim for mandamus against Brown and Williams in their individual capacities. Indeed, our Supreme Court has recognized that "mandamus is

---

[55] *See Lathrop v. Deal*, 301 Ga. 408, 425 (III) (801 SE2d 867) (2017) ("Sovereign immunity extends . . . to suits for declaratory relief."); *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 298 Ga. 425, 428 n.4 (782 SE2d 436) (2016) ("[W]e squarely address [the] question and find that declaratory judgment actions of this type are, in fact, barred by the doctrine of sovereign immunity."). Because Carson did not explicitly plead declaratory judgment or, accordingly, clearly challenge the moratorium's enforcement by a County employee—be it Brown, Williams, or someone else—in their individual capacity, we decline to engage in the speculative, theoretical gymnastics that would be required to determine whether such a claim would survive. *See Lathrop*, 301 Ga. at 415 (II) (A) ("In other cases, . . . we found that the doctrine posed no bar to suits in which state officers were sued in their individual capacities with respect to the enforcement of allegedly unconstitutional laws."); *Ga. Dep't of Nat'l Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) ("Our decision today does not mean that citizens aggrieved by the unlawful conduct of public officers are without recourse. It means only that they must seek relief against such officers in their individual capacities. In some cases, qualified official immunity may limit the availability of such relief, but sovereign immunity generally will pose no bar."). Given the state of the complaint, we leave that question for another day.

33

a personal action against a public official, not against the government."[56] And

sovereign immunity is "no bar to petitions for writs of mandamus."[57] Accordingly, we

reverse the trial court's dismissal of Carson's petition for mandamus against Brown

and Williams in their *individual* capacities.

3. *Case Number A18A1979.*

In Case Number A18A1979, Brown and Williams cross-appeal from the trial

court's partial grant of their motion for judgment on the pleadings, arguing that the

trial court erred in (1) finding that Carson's action was not barred by res judicata; (2)

failing to dismiss the action for a failure to first exhaust administrative remedies; and

(3) finding that Carson's land-disturbance application was not clearly rejected. We

will address each of these contentions in turn.[58]

---

[56] *Britton v. Regus*, 270 Ga. 313, 313 (509 SE2d 918) (1998); *see Harper v. State Bd. of Pardons & Paroles*, 260 Ga. 132, 132 (390 SE2d 592) (1990) (per curiam) ("[M]andamus lies against an official to require the performance of a clear legal duty. The writ of mandamus does not reach the office, but is a personal action against the official."); *Bulloch Cty. v. Ritzert*, 213 Ga. 818, 818 (2) (102 SE2d 40) (1958) ("[T]he writ of mandamus is personal and issues to the individual to compel performance, and it does not reach the office but is directed against the officer to compel him to perform the required legal duty.").

[57] *Lathrop*, 301 Ga. at 434 (III) (C).

[58] Carson argues that we lack jurisdiction over the cross-appeal because Brown and Williams failed to file a notice of cross appeal within fifteen days from service

34

(a) *Action Barred by Res Judicata*.

Brown and Williams assert that the trial court erred in failing to address their argument that Carson's claims were barred by claim preclusion, or *res judicata*,[59] because Red Bull had previously filed a declaratory judgment action against the Forsyth County Board of Commissioners; but Red Bull never served the case and eventually voluntarily dismissed same. Brown and Williams included the relevant documents related to this proceeding as exhibits to one of their amended answers, and

of the notice of appeal in the main case on January 3, 2018. But we agree with Brown and Williams that their notice of cross-appeal was properly filed on April 4, 2018. The convoluted procedural history of these appeals is detailed in Division 1 *supra*, but following this Court's grant of Carson's application for discretionary appeal, Carson filed a *second* notice of appeal on March 30, 2018, making the April 4, 2018 notice of cross-appeal timely. *See* OCGA § 5-6-35 (g) ("Within ten days after an order is issued granting the appeal, the applicant, to secure a review of the issues, shall file a notice of appeal as provided by law. The procedure thereafter shall be the same as in other appeals."); CT. OF APPEALS R. 31 (k) ("If the discretionary application is granted, the appellant must file a notice of appeal in the trial court within 10 days of the date of the order granting the application."); *see also Zekser v. Zekser*, 293 Ga. 366, 369 (2) n.13 (744 SE2d 698) (2013) ("Nothing is required of a cross-appellant in response to an application for discretionary review, and the cross-appeal follows the grant of discretionary review and the timely filing of a notice of appeal, at which time, the procedure shall be the same as in other appeals." (punctuation omitted)).

[59] *See Washington v. Hopson*, 299 Ga. 358, 362 (2) n.2 (788 SE2d 362) (2016) (noting that claim preclusion and *res judicata* are the same thing); *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 737 (2) n.4 (783 SE2d 614) (2016) (same).

the issue of *res judicata* was argued and briefed before the trial court in their motion.[60] Nevertheless, the trial court did not rule upon same when it partially granted the motion for judgment on the pleadings.

In Georgia, OCGA § 9-12-40 represents a codification of the common law doctrine of *res judicata*, and provides as follows:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

The purpose of this doctrine is to prevent the "re-litigation of claims which have already been adjudicated, or which could have been adjudicated, between identical

---

[60] In ruling on a motion to dismiss, a trial court is "authorized to consider exhibits attached to and incorporated into the complaint." *Lord v. Lowe*, 318 Ga. App. 222, 223 (741 SE2d 155) (2012); *see* OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Trop, Inc.*, 296 Ga. at 89 (2) ("Consideration of . . . exhibits to the pleadings did not convert the motion to dismiss into a motion for summary judgment."); *Stendahl v. Cobb Cty.*, 284 Ga. 525, 526 (1) n.2 (668 SE2d 723) (2008) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and, if incorporated into the pleadings, may be considered when deciding a motion to dismiss for failure to state a claim without converting the motion into one for summary judgment." (citations & punctuation omitted)).

parties or their privies in identical causes of action."[61] And three prerequisites must be satisfied before *res judicata* acts as a bar to subsequent litigation, those being (1) the identity of the cause of action, (2) identity of the parties or their privies, and (3) a previous adjudication on the merits by a court of competent jurisdiction.[62] The party invoking the doctrine of *res judicata*, of course, bears the burden of proving the defense.[63]

Here, the record shows that on November 7, 2016, Red Bull Holdings II, LLC, filed suit against Forsyth County and its Board of Commissioners (suing the members of the Board in their official capacities) via a verified complaint in equity for declaratory judgment. The suit concerned the same property at issue in this matter. Red Bull alleged that imposition of the moratorium on the property and the subsequent amendment of the Unified Development Code amounted to a down-zoning that violated Red Bull's constitutional rights. Accordingly, Red Bull

---

[61] *Crowe v. Elder*, 290 Ga. 686, 688 (723 SE2d 428) (2012); *see also Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010) (same).

[62] *Crowe*, 290 Ga. at 688; *Brinson*, 287 Ga. at 486.

[63] *Sanders v. Trinity Universal Ins. Co.*, 285 Ga. App. 705, 707 (3) (647 SE2d 388) (2007); *see also Callaway v. Irvin*, 123 Ga. 344, 351 (4) (51 SE 477) (1905) ("Upon the party setting up an estoppel by judgment rests the burden of proving it.").

challenged the constitutionality of "the Defendants' Unified Development Code, and the Downzoning, facially and as applied to the Property."

To that end, Red Bull made claims based upon the allegation that the down-zoning resulted in a taking of the property; asserting a violation of due-process rights; seeking equitable relief by way of having the down-zoning declared null and void, and set aside or rescinded; arguing that the down-zoning amounted to an inverse condemnation; and seeking declaratory judgment that the down-zoning was "illegal, unconstitutional, null, void and of no further force or effect." Thereafter, on February 2, 2017, Red Bull voluntarily dismissed its action under OCGA § 9-11-41 (a) (1) (A)[64] without prejudice.

Brown and Williams argue that the claims made by Carson and Red Bull were required to be brought in Red Bull's voluntarily dismissed suit and, accordingly, are barred by *res judicata*. In assessing this contention, we must consider whether Brown and Williams have met their burden of proof on the three prerequisites for establishing *res judicata*.

---

[64] This Code Section provides as follows: "Voluntary dismissal; effect: (1) By plaintiff; by stipulation. Subject to the provisions of subsection (e) of Code Section 9-11-23, Code Section 9-11-66, and any statute, an action may be dismissed by the plaintiff, without order or permission of court: (A) By filing a written notice of dismissal at any time before the first witness is sworn[.]"

Setting aside the issue of whether the identity of the cause of action is the same or whether Red Bull's voluntary dismissal of the prior suit constituted an adjudication on the merits, Brown and Williams have failed to establish that the parties in the two actions were identical or in privity.[65] And because Brown and Williams were not parties to the prior suit, nor is the Board of Commissioners a party to the current case, Brown and Williams must establish that they are in privity with the Board of Commissioners.

As our Supreme Court has explained, a privy is generally defined as "one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right."[66] In other words, before privity can be established, "the interests of the party must fully 'represent' the interests of the privy and be fully congruent with those interests."[67]

---

[65] Although Carson was not a party to the prior suit, Red Bull undisputedly was, and Carson signed Red Bull's verified pleading in the former case.

[66] *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 421 (1) (627 SE2d 549) (2006) (punctuation omitted); *accord Butler v. Turner*, 274 Ga. 566, 568 (1) (555 SE2d 427) (2001).

[67] *Butler*, 274 Ga. at 568 (1) (punctuation omitted).

Here, we have determined, and Brown and Williams have conceded, that the trial court improperly dismissed the petition for mandamus as it was asserted against them in their *individual* capacities.[68] And because, as we explained *supra*, "mandamus is a personal action against a public official, not against the government,"[69] the Board of Commissioners and Brown and Williams could not possibly be in privity. Nor can the Board of Commissioners be said to have represented the interests of Brown and Williams in their official capacities on the issue of mandamus,[70] *i.e.* the issue of whether the director and planner technician for the Forsyth County Department of Planning and Community Development can be compelled to process a land

---

[68] *See supra* Division 2 (c).

[69] *Britton*, 270 Ga. at 313; *see Harper*, 260 Ga. at 132 (per curiam) ("[M]andamus lies against an official to require the performance of a clear legal duty. The writ of mandamus does not reach the office, but is a personal action against the official."); *Bulloch Cty.*, 213 Ga. at 818 (2) ("[T]he writ of mandamus is personal and issues to the individual to compel performance, and it does not reach the office but is directed against the officer to compel him to perform the required legal duty.").

[70] We reiterate the distinction between Carson's request that Brown and Williams be compelled to process the application and the request that the trial court find the moratorium to be invalid, which latter request was, in actuality, a request for declaratory judgment that was barred by sovereign immunity. *See supra* Division 2 (a) & (b).

40

disturbance application within that department.[71] Accordingly, the trial court did not err in failing to dismiss Carson's claims on the basis of *res judicata*.

(b) *Failure to Exhaust Administrative Remedies.*

Next, Brown and Williams argue that the trial court erred in failing to address their argument that Carson's claim for mandamus should be dismissed for failure to exhaust administrative remedies. In a separate but related argument, Brown and Williams argue that the trial court erred in finding that the land-disturbance permit application was not clearly rejected by Williams. We disagree with both assertions.

Brown and Williams contend that because Carson did not appeal the rejection of their permit application to the Zoning Board of Appeals within 30 days of its rejection, as required by the County's Unified Development Code, the petition for mandamus is barred by the failure to exhaust administrative remedies.[72] But for this

---

[71] *See Gary v. Dollar Thrifty Automotive Grp.*, 329 Ga. App. 320, 322 (763 SE2d 354) (2014) (holding that parties to two suits could not be said to be in privity "because their interests were not fully congruent").

[72] *See City of Suwanee v. Settles Bridge Farm, LLC*, 292 Ga. 434, 437 (738 SE2d 597) (2013) ("Requiring exhaustion of administrative remedies prevents unnecessary judicial intervention into local affairs and promotes judicial economy because local authorities, unlike the court, have the power to grant the zoning relief sought." (punctuation omitted)); *Powell v. City of Snellville*, 266 Ga. 315, 316 (467 SE2d 540) (1996) (same).

41

to be true, there must have been a *decision* made on the permit application. And as we explained at length in Division 1 (c) (i), no zoning decision was made on the application.[73] Once again, the "release" of the application back to Carson by Williams on September 9, 2016, did not amount to a rejection. And we, like the trial court, view the County attorney's letter to Carson not as its own independent rejection of the application, or a confirmation of rejection, but instead an interpretation of Williams's prior communication to Carson.[74] Accordingly, Brown and Williams's final two enumerations of error in their cross-appeal are without merit.

---

[73] *Cf. Cooper Homes*, 283 Ga. at 114-15 (1) (holding that trial court erred in applying "futility" exception in the face of argument that property owner failed to exhaust administrative remedies before petitioning for mandamus because an appeal to the Zoning Board of Appeals on the Planning and Development Department's *decision to deny* a building permit was not the same decision the Zoning Board of Appeals itself had made to deny an application for interior side yard setback).

[74] We also reject Brown and Williams's contention that Carson was required by the UDC to submit a new application within twelve months of the initial plan's submission if no permit had been obtained by that time (*i.e.*, by September 2017). Suffice to say that, upon being informed by the County attorney that the permit application would not be processed, Carson was not required to wait another six or seven months to resubmit an application rather than proceeding to file a petition for writ of mandamus, as was done in March 2017.

For all these reasons, we affirm in part and reverse in part in Case Numbers A18A1978 and A18A1751, and we affirm in Case Number A18A1979.

*Judgment affirmed in Case No. A18A1979. Judgments affirmed in part and reversed in part as to Case Nos. A18A1951 and A18A1978. Doyle, P. J., and Mercier, J., concur.*